554 A.2d 980

COMMONWEALTH of Pennsylvania, Appellee,

v.

Henry M. GREER, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 21, 1988.

Filed Feb. 24, 1989.

130

Clyde W. Vedder, York, for appellant.

Mark A. Bellavia, Assistant District Attorney, York, for Com., appellee.

Before KELLY, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered on March 31, 1988, by the York County Court of Common Pleas, following the appellant's conviction on the charges of rape and robbery on March 21, 1980. The appellant contends we should vacate his sentence due to the inexcusable delay of over seven and one-half years between the denial of his post-verdict motions and sentencing. In the alternative, the appellant contends that we should compel the lower court to enter the same sentence as that originally imposed. We disagree and affirm the judgment of sentence.

The record reveals the following procedural history: On March 21, 1980, after a trial by jury, the appellant was convicted of rape and robbery, at 1009 Criminal Action

1979. Timely post-trial motions were filed and argued on July 8, 1980. His motions were denied, and sentencing was set for August 8, 1980. On August 8, Judge Joseph E. Erb sentenced the appellant to a term of imprisonment of ten to twenty years on the rape charge and a consecutive term of five to ten years on the robbery charge.

On August 20, 1980, new counsel, Attorney Pell, was appointed to represent the appellant. On September 4, 1980, counsel, fearing he would be unable to prepare and file an appeal by September 8, 1980, Pell petitioned the court to vacate the appellant's sentence, reimpose the sentence at a later date and then entertain a motion for reconsideration of sentence and a Post Conviction Hearing Act petition at that time. Judge Erb granted the motion the following day, scheduling another sentencing hearing for October 17, 1980. At the sentencing hearing, actually held on October 16, counsel requested a postponement on the grounds that the transcription of the appellant's trial and subsequent proceedings had not been completed. Judge Erb agreed to postpone the sentencing until the transcript was completed. It is apparent from the record that the transcript was completed and filed by April 29, 1981. However, inexplicably, a date for sentencing was never set, and no appeal was filed.

Meanwhile, the appellant was convicted of rape, burglary and aggravated assault in a factually similar but unrelated case, at 1060 Criminal Action 1979. Later in the day of October 16, 1980, Judge Emanuel A. Cassimatis sentenced the appellant to a term of incarceration of ten to twenty years on the rape conviction and a consecutive term of five to ten years on the burglary conviction; an aggravated assault conviction was merged into the rape conviction for sentencing purposes. From the record, it is clear that Judge Cassimatis intended his sentence to run consecutively to that previously imposed (and subsequently vacated apparently without Judge Cassimatis' knowledge) by Judge Erb.

Subsequently, in April of 1982, counsel for the appellant, Attorney Pell, filed a PCHA petition alleging the ineffectiveness of trial counsel, Attorney Oare. Simultaneously, the appellant filed a *pro se* PCHA petition alleging the ineffectiveness of current counsel, Attorney Pell. Consequently, new counsel, Attorney Kelly, was appointed, and the PCHA hearing was postponed in order to allow new counsel to file an amended petition. On May 25, 1983, a PCHA hearing was held, briefs in support and in opposition to the petition were filed, and, finally, on March 20, 1985, the appellant's petition for post-trial relief was denied. On April 19, 1983, notice of appeal from the denial of PCHA relief was filed. However, on July 30, 1985, the appeal was quashed due to the appellant's failure to file a brief.

Following the appellant's petition for appointment of new counsel, present counsel, Attorney Vedder, was appointed on January 29, 1987. Thereafter, counsel filed another PCHA petition requesting the appellant's appellate rights concerning his PCHA appeal be restored. A hearing date was set for May 27, 1987. However, the record is silent as to any further information concerning that PCHA petition. In any event, on November 9, 1987, the court, following a discussion with the Commonwealth and defense counsel, ordered the appellant to appear for sentencing on January 25, 1988. After several delays, sentencing took place on March 31, 1988 before (now) President Judge Erb.

At this sentencing hearing, counsel moved that the convictions against the appellant, at 1009 C.A.1979, be dismissed or, in the alternative, that the instant sentences be made to run concurrently with the sentences imposed by Judge Cassimatis, at 1060 C.A.1979. Judge Erb noted that, at the time Judge Cassimatis sentenced the appellant, Judge Cassimatis believed he was sentencing the appellant consecutively to the sentences which Judge Erb had imposed (and subsequently vacated). Judge Erb, realizing Judge Cassimatis's sentences could not run consecutively to the sentences he would soon impose, questioned whether his sen-

tences should run consecutively to those imposed some seven and one-half years earlier by Judge Cassimatis?

After reviewing the appellant's case, Judge Erb decided that he would impose the same sentences which he had previously vacated and that the sentences would begin to run at the expiration of those imposed by Judge Cassimatis. Judge Erb noted that "[w]e do not see how delay in the sentencing of this Court [was detrimental to the Defendant] since the sentencing was prompt but removed at the request of counsel and since the Defendant has been incarcerated since the case was tried in court on other matters and since the Defendant is protected with regard to any appeal with which he wishes to take ..." (Sentencing Transcript, March 31, 1988, p. 8–9).

■ While not expressly framing his argument in terms of violations of his constitutional rights, the appellant, in effect, claims: 1) he was denied his right to a speedy trial, as provided under the Sixth Amendment and made applicable to the states through Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); and 2) he was denied protection under the Due Process Clause of the Fourteenth Amendment with regard to his appeal as of right, *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). *See also Burkett v. Cunningham*, 826 F.2d 1208 (3rd Cir.1987).[1]

■ In *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983), our Supreme Court addressed the issue currently before us. Therein, the Court stated:

Neither this Court nor the United States Supreme Court has expressly held that the disposition of post-verdict motions or sentencing is a part of trial for Sixth Amendment purposes. However, we will assume arguendo that

---

1. While we will not ordinarily correctly frame the issues for appellate review, we will in the instant case since the appellant in challenging the legality of his sentence, an issue which cannot be waived. *See Commonwealth v. Button*, 332 Pa.Super. 239, 481 A.2d 342, 348 (1984); *Commonwealth v. Britton*, 334 Pa.Super. 203, 482 A.2d 1294 (1984), appeal dismissed 509 Pa. 620, 506 A.2d 895 (1986).

disposition of post-verdict motions and sentencing are a part of trial for the purposes of a defendant's Sixth Amendment right to a speedy trial.

*Glover,* 500 Pa. at 529, 458 A.2d at 937.

This approach was first adopted by our Supreme Court in *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980), and has been followed in subsequent Pennsylvania cases. *See Commonwealth v. Atkinson,* 364 Pa.Super. 384, 528 A.2d 210 (1987); *Commonwealth v. Tillia,* 359 Pa.Super. 302, 518 A.2d 1246 (1986); *Commonwealth v. Button,* 481 A.2d 342. Rather than merely continue to perpetuate the assumption that the Speedy Trial Clause applies to sentencing, we will treat the subject as established law. In so doing, we follow the lead of the federal judiciary which first made the assumption. *See Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957) (lead case applying the assumption that the Speedy Trial clause applies to sentencing); *Burkett v. Cunningham,* 826 F.2d at 1220 ("We now make explicit what we have assumed in our previous cases, that the Speedy Trial clause of the Sixth Amendment applies from the time the accused is arrested or criminally charged ... up through the sentencing phase of prosecution ..."); *Perez v. Sullivan,* 793 F.2d 249, 253 (10th Cir.), cert. denied, 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986) (Since *Pollard,* all courts addressing this issue "have either treated the subject as established law or have perpetuated the Court's assumption in *Pollard.*").

■ Now that we have determined that the appellant's right to a speedy trial is implicated presently, we begin our analysis.

In determining whether a defendant's constitutional speedy trial right has been violated, it must first be determined whether the delay itself is sufficient to trigger further inquiry. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981). If the delay is sufficient to trigger further inquiry, the reviewing court

must balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial. *Barker v. Wingo, supra; Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980).

*Glover,* 458 A.2d at 937; *See also Atkinson,* 528 A.2d at 217; *Tillia,* 518 A.2d at 1257; *Button,* 481 A.2d at 348; *Burkett v. Cunningham,* 826 F.2d at 1220–1221, applied at 1223–1225; *United States v. Campisi,* 583 F.2d 692, 694 (3rd Cir.1978).

Instantly, there was a seven and one-half year delay between the date of the appellant's second sentencing hearing and his ultimate sentencing. That delay is most certainly sufficient to warrant further inquiry.[2] The extreme length of the delay, which is the first factor in our analysis, weighs heavily in the appellant's favor.

The second factor to be considered is the cause of the delay. The record offers possible explanations for the delay. First, the appellant's numerous counsel continued to proceed erroneously under the Post Conviction Hearing Act, and the lower court continuously permitted such petitions.[3]

Second, the similarities between the appellant's present convictions and those at 1060 C.A.1979 have seemingly caused much confusion, as our lengthy explanation of the procedural history of the case would indicate. Since the appellant has been incarcerated throughout the entire delay

[2] In the following cases, the respective delays were of sufficient length to trigger further inquiry: *Pounds, supra,* approximately two years; *Glover, supra,* forty-nine months; *Tillia, supra,* nineteen months; *Atkinson, supra,* five and one-half years.

[3] Obviously, the appellant was not eligible for relief under the PCHA. Under 42 Pa.C.S.A. § 9543, a person is eligible for post-conviction relief only if: 1) "he has been convicted of a crime"; *and* 2) "he is incarcerated in this Commonwealth under a sentence of death or imprisonment or on parole or probation."

While it is true that the appellant was incarcerated when the petitions were filed, he was not incarcerated on the conviction which was the basis of his petitions. Clearly, the Legislature intended the petitioner to be incarcerated on the conviction under attack when a PCHA action is initiated.

on a substantially similar set of convictions, it appears that all concerned mistakenly believed that the appellant had actually been sentenced on the convictions now before us. Even the record does not reveal, nor does counsel propose, what events brought the delay to light in November of 1987.

As in *Glover, supra,* the record does not indicate that either the appellant or the Commonwealth deliberately attempted to cause the delay. However, as in *Atkinson, supra,* the record demonstrates that the seven and one-half year delay was caused by the negligence of the appellant's counsels in their erroneous pursuit of PCHA claims prior to the appellant's sentencing. Since the delay was attributable, at least in part, to the negligent stewardship of the appellant's attorneys, the responsibility for the delay does not weigh heavily upon the Commonwealth. *Glover,* 458 A.2d at 937–938; *Atkinson,* 528 A.2d at 218; *Barker v. Wingo, supra.*

The next factor for our consideration is whether the appellant made a timely assertion of his right to a speedy trial. Instantly, the appellant made no attempt prior to the actual sentencing to allege an infraction of his speedy trial rights. Moreover, after his oral motion to dismiss the charge was denied at the sentencing proceeding, the appellant did not file a written motion to reconsider sentence which advanced the claim in detail. Clearly, the appellant did not make a timely assertion of his speedy trial rights. *See e.g., Atkinson,* 528 A.2d at 218 (motion filed by defendant at sentencing five and one-half years after his conviction was not timely assertion); *Tillia,* 518 A.2d at 1258 (motion filed five months after scheduled but postponed post-trial motion hearing was not timely assertion); *Glover,* 458 A.2d at 938 (motion filed thirty-nine months after original sentence vacated and post-verdict motions reinstated was not timely assertion).

The final factor for consideration is whether the delay resulted in any prejudice to the interests protected by the

right to a speedy trial. In *Glover, supra,* our Supreme Court stated:

The particular interests that the Sixth Amendment was designed to protect are the following: to prevent oppressive pre-trial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. *U.S. v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

*Glover,* 458 A.2d at 938; *Atkinson,* 528 A.2d at 218; *Pounds,* 417 A.2d at 601 n. 10.

Instantly, the appellant cannot claim prejudice resulting from oppressive pre-trial incarceration or impairment of his defense since the delay occurred after the appellant's trial and conviction. His only possible claim is that he suffered anxiety because he faced a potential prison term. However, any claims of dolorous effect are without merit in light of the fact that the appellant waited seven and one-half years to assert his right. *See Glover,* 458 A.2d at 938.

Moreover, the appellant is currently serving his eighth year of a fifteen to thirty year sentence for the unrelated rape and burglary charged at 1060 C.A.1979. Thus, the appellant did not forego any opportunities in anticipation of future sentencing. In fact, it is quite clear in the record that the appellant knew that Judge Erb and Judge Cassimatis intended the sentences at 1009 C.A.1979 and 1060 C.A. 1979 to run consecutively. We also note that the delay in sentencing did not exceed the collective minimum sentence to which he was sentenced in the cause *sub judice. See Atkinson,* 528 A.2d at 218; *Pounds,* 417 A.2d at 600–601; *Button,* 481 A.2d at 348; *Commonwealth v. Giovengo,* 188 Pa.Super. 220, 146 A.2d 629 (1958), cert. denied 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959) (sentence may be suspended or deferred for a period of time equal to the maximum term of the possible sentence provided proper reasons are presented to justify the delay).

After balancing the preceding four factors, we conclude that the appellant was not denied his right to a speedy trial

as guaranteed by the Sixth Amendment.[4] While we do not condone this delay in post-trial proceedings, we are not convinced that it mandates a dismissal of the charges with prejudice. Our decision is based on the fact that the delay was directly related to the appellant's and his counsel's actions and inaction. His counsel insisted on pursuing PCHA relief without recognizing that the appellant had yet to be sentenced. It was at appellant's own request that his original sentence was vacated, and, after the postponement of resentencing, the appellant never once during the ensuing seven and one-half years demanded his speedy trial right to sentencing. Finally, the appellant is unable to demonstrate any prejudice as a result of the delay.

Having determined that the appellant's speedy trial rights were not violated, we turn to the due process issue. The Supreme Court of the United States has held that the Due Process clause protects the right to direct appeal when that right is guaranteed by the state. *See e.g. Evitts*, 469 U.S. at 393, 105 S.Ct. at 834, 83 L.Ed.2d at 827.[5] In Pennsylvania, sentencing acts as the gatekeeper to the criminal appellate process. Thus, a delay in sentencing correspondingly delays an appeal. Since the convicted criminal has an appeal as of right to the Superior Court, the appeal to this court is, in effect, the final step in the adjudication of an individual's criminal status. *Evitts*, 469 U.S. at 404, 105 S.Ct. at 840, citing *Griffin*, 351 U.S. at 18, 76 S.Ct. at 590.

The Due Process clause thus protects not only against delays in trial, including sentencing; it also guarantees a reasonable speedy appeal if the state has chosen to give

**4.** We note that no one factor is dispositive when applying the *Barker v. Wingo* test. The factors are guidelines, not rigid tests, and no single factor is necessary nor of sufficient importance to prove a violation of speedy trial rights. *Perez v. Sullivan*, 793 F.2d at 254; *Burkett v. Cunningham*, 826 F.2d at 1220.

**5.** We note that, in *Pounds*, 417 A.2d at 601, our Supreme Court refused to address the issue of "prejudice by virtue of the resulting delay in consideration of his appeal," asserting that "is not the type of interest which the right to a speedy trial protects." However, since the *Pounds* decision, the Supreme Court of the United States in *Evitts, supra,* has made it quite clear that due process can be violated by a prolonged post-verdict delay that correspondingly delays an appeal as of right.

defendants the right to "attempt[ ] to demonstrate that the conviction, and the consequent drastic loss of liberty, is unlawful." *Evitts,* 469 U.S. at 396, 105 S.Ct. at 836. Where post-verdict delays not only impede sentencing but also the appeal as of right, the clause is doubly implicated. "Due process can be denied by any substantial retardation of the appellate process." *Rheuark [v. Shaw],* 628 F.2d [297] at 302 [ (5th Cir.1980) ] (citing cases); see also *DeLancy [v. Caldwell],* 741 F.2d [1246] at 1247 [ (10th Cir.1984) ] (same).

*Burkett v. Cunningham,* 826 F.2d at 1221.

 While due process can be denied by a sentencing delay which simultaneously delays the appellate process, not every delay in the appeal of a case, even an inordinate one, violates due process. *Burkett,* 826 F.2d at 1221; *Rheuark,* 628 F.2d at 303. Not only must the appellant prove his cause was prejudiced by the delay, but he must also prove that the state's action in causing or allowing the delay was "fundamentally unfair," not merely undesirable, in order to establish a due process violation. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–29, 52 L.Ed.2d 752, 759 (1977); *Burkett,* 826 F.2d at 1221; see, e.g. *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431, 437 (1974).

 Since both the Due Process and Speedy Trial clauses constrain post-verdict delay, the federal judiciary has applied the four *Barker v. Wingo* factors as a means of determining whether due process has been violated. See *Burkett,* 826 F.2d at 1222, applied at 1225; *DeLancy,* 741 F.2d at 1247–1248; *Rheuark,* 628 F.2d at 302–304. The only significant difference between the test used in the speedy trial analysis and one employed in the due process analysis relates to the prejudice prong of the *Barker v. Wingo* test. Both the Third and Tenth Circuit, in their adaptations of the prejudice prong, recognized three interests in promoting a prompt appeal:

(1) prevention of oppressive incarceration pending appeal;

(2) minimization of anxiety and concern of those convicted

awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Burkett,* 826 F.2d at 1222, quoting *Rheuark,* 628 F.2d at 303 n. 8.

Applying the test instantly, first, we recognize that the appellant has been incarcerated for seven and one-half years without having his appellate rights exercised. However, that period of imprisonment is unrelated to the instant charges; rather, the appellant has been properly incarcerated based on the sentences from the appellant's unrelated rape and burglary convictions.

Second, to say that the appellant has suffered anxiety and concern while awaiting the outcome of an appeal, is absurd. The appellant, after the postponement of his resentencing in October of 1979, never demanded that sentencing occur, and, not until sentencing in March of 1988, was a motion to dismiss lodged. The appellant, misadvised by counsel, continued to proceed under the Post Conviction Hearing Act. Even under the PCHA, the appellant did not diligently pursue his appeal of the denial of his petition filed in April of 1982, and the appeal was dismissed for failure to file a brief. In addition, the appellant still has at least seven years of his other sentence to serve. Thus, a protracted appeals period on the instant charges would be of little consequence to the appellant's future plans.

Third, and most important, the appellant's grounds for appeal and defenses in case of a reversal and retrial are not impaired. The record is complete and the transcripts are ripe for review. Fair and just review of the appellant's case is not hampered by the delay. While we cannot say with certainty that his defenses in the event of a reversal and retrial have not been impaired, the appellant has not offered any reasons for possible impairment. Moreover, even if he made such an assertion, the results of the delay, in our opinion, have not arisen to the level of "fundamental unfairness," and, therefor, discharge is not warranted.

Applying the modified *Barker v. Wingo* test, we find that the appellant's due process rights have not been violated, despite the fact that seven and one-half years have passed since his convictions. While we reiterate our displeasure with such an inordinate delay, we are certain that appellant's due process rights were not sufficiently violated to warrant dismissal of the charges against him. If the appellant were to appeal his conviction, his appeal most certainly would be completed prior to expiration of his sentence on 1060 C.A.1979. If, on appeal, the appellant is able to raise substantive issues which ultimately result in a new trial, that court would be better able to determine to what extent, if any, the appellant's defense has been damaged by the passage of time.

Now that we have determined that the appellant has not been deprived his right to a speedy trial and due process of law under the Constitution, we must determine whether the lower court abused its discretion by imposing an allegedly harsher sentence after the appellant's original sentence was vacated. The appellant asserts that the trial court, in ordering the appellant's sentences served consecutively to those imposed at 1060 C.A.1979, effectively imposed a harsher sentence than was imposed and vacated years ago.

■ However, it is abundantly clear from the record that the trial court, in effect, did not impose a harsher sentence. At the time of the original sentencing, it was the intention of the sentencing judges to have the sentences at 1009 C.A.1979 and 1060 C.A.1979 run consecutively. Instantly, Judge Erb's decision to have the present sentences run consecutively to those imposed by Judge Cassimatis merely gives effect to the original sentencing scheme. Simply put, the appellant will first serve the sentences imposed by Judge Cassimatis at 1060 C.A.1979 and then will serve the sentences imposed by Judge Erb, rather than *visa versa* as originally intended.

■ Moreover, assuming *arguendo* that the appellant has received a harsher sentence, the sentencing court did not err by imposing its sentence to run consecutively to all

other sentences currently being served. Instantly, the appellant requested that the sentencing court vacate his sentence and reimpose it at a later date in order to allow him the opportunity to file a *de novo* motion for reconsideration of sentence.[6]

Instantly, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) is dispositive.[7] In *Pearce, supra*, the United States Supreme Court stated:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. (footnote omitted)

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for doing so must affirmatively appear. Those

6. In the case of a Pa.R.Crim.P. Rule 1410 motion to modify sentence by the defendant, the sentencing court cannot increase the sentence since it cannot raise the issue of sentence enhancement *sua sponte. Commonwealth v. Broadie*, 339 Pa.Super. 394, 402 n. 5, 489 A.2d 218, 222 n. 5 (1985); *Commonwealth v. Murphy*, 305 Pa.Super. 246, 451 A.2d 514 (1982). However, this is not the case presently since the sentence was not enhanced because of the request to modify the sentence. Rather, the sentence was enhanced at a *de novo* sentencing hearing occasioned upon the appellant's request to have his sentence vacated.

7. Procedurally, *Pearce, supra*, and the present action are different. In *Pearce, supra*, the harsher sentence was imposed following the defendant's successful exercise of his appellate rights. Instantly, the harsher sentence was imposed following the defendant's request to have his sentence vacated and then reimposed in order to allow him to file a *de novo* motion to reconsider sentence. However, their procedural differences do not vitiate the applicability of *Pearce, supra*, since the interest which *Pearce, supra*, seeks to protect, preventing the fear of vindictiveness on the part of the sentencing court which may deter a defendant from exercising his right to appeal or collaterally attack his conviction, is implicated presently.

reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 725–726, 89 S.Ct. at 2080–2081, 23 L.Ed.2d at 669–670.

At sentencing, Judge Erb noted that Judge Cassimatis intended the rape and burglary sentences at 1060 C.A.1979 to run consecutively to each other and consecutively to the original sentence imposed by Judge Erb. In addition, Judge Erb made reference to the appellant's extensive criminal record and noted that "there is no anticipated—as far as the court is concerned—rehabilitation of this Defendant." Instantly, we find that the sentencing court was not motivated by "vindictiveness" when imposing appellant's sentence, but rather the court was motivated by the desire to effect the sentencing arrangement which Judge Erb and Judge Cassimatis originally intended to impose. The court's reasons for imposing a sentence to run consecutively to those currently being served are clear, and we are persuaded that such a sentence is legal and appropriate. *See Broadie*, 489 A.2d at 221–222.[8]

Finally, this appeal could also be considered a challenge of the discretionary aspects of his sentence. Assuming that the appellant's brief complies with *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987) and Pa.R.A.P. 2119(f), we find no abuse of discretion on the part of the trial court.

■■■ "Imposition of a proper sentence is vested in the sound discretion of the trial court, whose exercise thereof

---

**8.** In *Broadie, supra,* we held that the double jeopardy clause of United States Constitution does not prohibit a sentencing court from modifying the sentence of a petitioner so as to increase his punishment. *Broadie,* 489 A.2d at 220–221; see also *Commonwealth v. Anderson,* 304 Pa.Super. 476, 450 A.2d 1011 (1982); *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

will not be disturbed unless the sentence imposed exceeds statutory limits or is manifestly excessive." *Commonwealth v. Bailey,* 368 Pa.Super. 618, 623–624, 534 A.2d 829 (1987), allocatur denied 542 A.2d 1364. Clearly, a sentencing court may impose consecutive sentences for separate crimes, *Commonwealth v. Pristas,* 222 Pa.Super. 254, 295 A.2d 114 (1972), and may impose a sentence to commence at the expiration of any other sentences which the defendant is currently serving, Pa.R.Crim.P. Rule 1406(c). Having reviewed the record, we find that the appellant's sentence is within the statutory limits, that the sentence is not manifestly excessive and that the court clearly stated adequate reasons for the sentence on the record. *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977).

In sum, we find that the appellant's speedy trial rights and due process rights guaranteed by the United States Constitution were not violated by the delay between the vacation of his prior sentence and his resentencing. Further, we find that the trial court did not impose a harsher sentence and that, assuming *arguendo* a harsher sentence was imposed, such a sentence was warranted due to the changed circumstances. Finally, we find that the trial court did not abuse its discretion when sentencing the appellant. Accordingly, judgment of sentence affirmed.

Judgment Affirmed.

KELLY, J., files a Concurring Statement.

KELLY, Judge, concurring:

I join in Judge Popovich's well-reasoned opinion. Appellant has attempted to paint himself as a victim of court delay, racked by the uncertainty arising from the failure of the court to impose sentence until seven and one half years after post-verdict motions were denied. His silence during that delay, however, proves the illusory nature of the tragic image he paints. Appellant had but to assert his speedy trial right and sentence would undoubtedly have been imposed.

Here, either appellant (like the court and counsel) was ignorant of the fact that sentence had not been imposed and therefore suffered no anxiety, or he knew sentence had not been imposed but elected to stay silent, thus deciding not to borrow trouble from the future. In either case, he made no assertion of his speedy trial right and established no actual prejudice arising from the lengthy but understandable delay in imposing sentence. Hence, his speedy trial claim must fail. *See Commonwealth v. Glover,* 500 Pa. 524, 458 A.2d 935 (1983).

Likewise, I agree that there is not the slightest appearance of vindictiveness arising from the imposition of the sentence consecutive to the one appellant was already serving. *Cf. Commonwealth v. Rocco,* 375 Pa.Super. 330, 544 A.2d 496 (1988) (discussing vindictiveness in sentencing generally).

Hence, I join the majority opinion.