633 A.2d 188

COMMONWEALTH of Pennsylvania

v.

George D. BROCKWAY, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 23, 1993.

Filed Oct. 29, 1993.

Robert B. McGuinness, Towanda, for appellant.

Robert Fleury, Asst. Dist. Atty., Towanda, for Com., appellee.

Before OLSZEWSKI, POPOVICH and HESTER, JJ.

OLSZEWSKI, Judge.

This is an appeal from the judgment of sentence entered against appellant, George Brockway. He was convicted of simple assault after a struggle with local police resulted in injury to an officer. Honorable Jeffrey Smith sentenced Brockway, after a 32–month delay, to no less than four nor more than twelve months incarceration plus fines and restitution. The delay was caused, in large part, by Brockway's incarceration in New York for parole violations and a pending drunk driving prosecution. Brockway contends that his sentence is illegal because it was deferred for a period of time in excess of the maximum penalty for the crime he committed, in this case two years. He also contends that his right to a speedy trial was violated by the excessive delay. We disagree.

## I.

It is undisputed that on July 19, 1989, Brockway pled guilty to a second-degree misdemeanor, which carries a maximum penalty of two years incarceration. 18 Pa.C.S.A. § 1104. It is also undisputed that he was not sentenced until March 16, 1992, a date well in excess of two years from the date of the plea. Thus, Brockway claims that the sentence is illegal, relying on this Court's holding in *Commonwealth v. Giovengo*, 188 Pa.Super. 220, 227, 146 A.2d 629, 632 (1958): "We conclude that in Pennsylvania a sentence may be suspended or deferred for a period of time equal to the maximum term for which the defendant might have been sentenced, provided proper reasons are present to justify the delay." (internal

footnote omitted).  As the trial court in this case aptly pointed out, however, the *Giovengo* rule was a product of our Supreme Court's interpretation of a sentencing statute which preceded the current sentencing code.  *See Commonwealth ex rel. Wilhelm v. Morgan,* 278 Pa. 395, 123 A. 337 (1924).  Thus, it would appear at first glance that *Giovengo* is inapposite here.

In *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980), however, a case decided under the current sentencing code, the defendant was convicted of first-degree murder and sentencing was delayed for nearly two years.  Our Supreme Court held that "[t]his period of delay did not extend beyond the collective maximum term of imprisonment for the offenses of which Pounds was convicted, and, thus, did not render sentencing, *prima facie,* invalid."  *Id.* at 628, 417 A.2d at 600.  This Court recognized later that the *Pounds* Court applied the *Giovengo* rule to a case decided under the current sentencing procedure.  We stated in *Commonwealth v. Button,* 332 Pa.Super. 239, 481 A.2d 342 (1984):

> Although admittedly [*Giovengo*] conforms to a statutory procedure no longer in force, our Supreme Court has applied the same rationale in *Commonwealth v. Pounds* [*supra*], holding that the constitutionality or otherwise of intervals between conviction and sentencing depends upon circumstance.

*Id.* at 250, 481 A.2d at 348.  This passage arguably suggests that the *Giovengo* rule survived the promulgation of the current sentencing procedure.  We are thus left with the question of whether under current procedure, a sentencing judge is limited, as a matter of law, to defer imposition of sentence for a period not to be exceeded by the maximum penalty which a defendant faces.

We feel that such a holding would strain logic and defy the current sentencing procedure.  First, there is nothing in the current sentencing code or our rules of criminal procedure which contains a rigid time limitation.  In fact, time's only mention occurs in a comment to Pennsylvania Rule of Criminal Procedure 1405, 42 Pa.C.S.A., which provides: "The sen-

tencing proceeding should not take place until all post verdict motions have been disposed of, and until all pre-sentence, psychiatric and diagnostic reports have been submitted to the court and counsel have had an opportunity to inspect and prepare comment thereon." (citation omitted). This comment, of course, does not answer the present inquiry because it only provides a time before which sentencing may not occur. Therefore, implying within the sentencing code and procedural rules a rigid time restriction would require this Court to engage in interstitial law-making of the purest sort, a process in which we are loath to engage.

Second, there is nothing in *Giovengo* which would suggest that a trial court's failure to sentence within the statutory sentencing range amounts to illegality of sentence *per se*. Indeed, inherent in *Giovengo*'s rationale is an understanding that a sentencing judge should be accorded flexibility to determine whether a prior term of incarceration will suffice to rehabilitate a defendant:

> The prisoner himself might very well be the beneficiary of a system which defers sentencing until the completion of the term of a prior imprisonment. It should be remembered that one of the main purposes sought to be accomplished by imprisonment is to improve the habits of the prisoner and not merely punish him for his offenses. If a prior period of imprisonment accomplished proper results, it would not be necessary to impose a further imprisonment. On the other hand, if the prior imprisonment had not accomplished the desired results, further imprisonment might be deemed necessary. Such a system not only helps the prisoner, but works a great benefit to society as a whole.

*Giovengo*, at 226–27, 146 A.2d at 632. Thus, a trial judge should be entitled to await the results of a prior incarceration, such as in this case, to determine whether further imprisonment is necessary to protect society's interest in punishing the criminal as well to as assess an individual's rehabilitative needs.

As the Commonwealth notes, moreover, imposing a time limitation within which the sentencing court must operate may

lead to onerous results because a defendant convicted of a less serious crime must be sentenced sooner than one convicted of a serious crime. For example, if a defendant is previously incarcerated awaiting sentencing on a crime with a comparatively short maximum incarceration, the sentencing court is required to assess the rehabilitative outcome of the first incarceration before its completion. If the same judge is faced with penalizing the same defendant for a more serious offense, on the other hand, he would be entitled to evaluate a defendant's progress at a much later date, when rehabilitation might have taken a more profound effect. The anomaly present in this situation is simply that the defendant is available to serve the second sentence no sooner in either case. Furthermore, since society's interest in punishing the lesser offense is more easily vindicated, the defendant might be *better* served by a more flexible sentencing schedule. Therefore, the Supreme Court's indication in *Pounds* that a delay in imposition of sentence that exceeds the statutory limit is *prima facie* invalid, as opposed to *per se* invalid as Brockway would have it, allows for flexibility because it places the focus of timely sentencing on the *reasons* for delay and not on a rigid time schedule.

Here, reasons for the delay are nearly all attributable to Brockway, for it was he who chose to violate his parole by operating his vehicle while intoxicated in New York. The sentencing court regularly scheduled sentencing hearings to determine Brockway's whereabouts and during each hearing Brockway's counsel did not object to deferral of sentence. Moreover, Brockway testified that he was released from prison on August 14, 1991, yet made no effort to inform the court of his release or to assert his right to be sentenced immediately.[1] The only period not attributable to Brockway himself, a

1. We note that the court finds it "peculiar" that defense counsel did not inform the court of Brockway's availability at a hearing approximately a month after Brockway's alleged release. Trial court opinion at 3. Counsel characterizes this as a disparagement of his ethics, which he claims is unfounded. We must emphasize that we do not interpret the trial court's language as charging counsel with any ethical violations nor do we suggest that counsel acted improperly in any way. Rather, the simple point is that the trial court was never made aware of

two-month period during which the presiding judge was unavailable, went without objection. We would make a mockery of the sentencing process under these circumstances by applying a bright line test to hold that Brockway's sentence was *per se* illegal.

Finally, we are satisfied that the timeliness of sentencing is best guided, in the absence of statute, by customary practice and the federal and state constitutions. We must acknowledge our venerable trial courts' attention in nearly all cases to expeditious sentencing following the disposition of post-trial motions pursuant to Pa.R.Crim.P. 1405, *supra*. It is a rare case where a sentencing judge in this Commonwealth hesitates to impose sentence after deciding post-trial motions. More importantly, however, our courts have recognized that a defendant's constitutional right to a fair and speedy trial encompasses the sentencing process. *Pounds, supra; Commonwealth v. Greer*, 382 Pa.Super. 127, 554 A.2d 980 (1989). In a constitutional inquiry, the focus does not rest exclusively on the length of the delay, as Brockway's interpretation of *Giovengo* would, but rather on a balance of factors including the length of the delay, the reasons for the delay, the defendant's timely assertion of his right to speedy sentencing, and any resulting prejudice caused by the delay. *Greer, supra*, at 138, 554 A.2d at 986 (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); *Commonwealth v. Andrews*, 391 Pa.Super. 363, 571 A.2d 410 (1990). We feel that this inquiry, which is entirely independent of any penal statute,[2] is far better suited to determine whether sentence was

Brockway's alleged availability for sentencing, by either Brockway, counsel, or the New York authorities, and it cannot be held responsible for its lack of notice. The party best able to avoid the problem made no effort to assert his rights, and the trial court cannot be held, therefore, to have violated them.

2. Indeed, a defendant may assert that his speedy trial rights were violated even when the sentence was imposed within the period which represents the maximum possible sentence. For example, a defendant who was convicted of first-degree murder, which carries a mandatory life sentence, would clearly be entitled to assert his rights if sentence was imposed in a dilatory fashion, even though, technically, the *Giovengo* rule could never be violated. *See Pounds, supra*, at 627, 417 A.2d at 600 (holding that even though delay of two years did not violate

imposed in a fair manner because it balances society's interest in punishing the criminal with defendant's interest in expeditious repose. At the same time, an inherent flexibility enables the trial court to best protect all of the interests involved.

We therefore hold that in this case, the trial court did not impose an illegal sentence merely because it came over two years after Brockway's guilty plea.

## II.

We are still left to determine, however, whether Brockway's speedy trial rights were violated by the delayed sentencing. We have recited the appropriate constitutional test and the relevant facts above. Additionally, a defendant's right to a speedy trial is designed to: (1) prevent oppressive pre-trial incarceration, (2) minimize anxiety and concern of the accused, and (3) limit the possibility that the defense will be impaired. *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983).

Here, the three-year delay before imposition of sentence was certainly substantial, but most of that time is accountable to Brockway's incarceration in New York. He was not, therefore, oppressively incarcerated as he awaited sentencing. Next, Brockway first asserted his right to a speedy sentence in January of 1992 and was sentenced less than two months later, in March. Thus, Brockway's claim that he will suffer anxiety because he has started a business and new family is without merit in light of the fact that he waited well over two years to initially assert the right. *See Greer, supra,* at 137, 554 A.2d at 985. Finally, there is no indication that Brockway suffered any prejudice as a result of the delay; he does not claim that his ability to present mitigating circumstances was hampered or that the trial court based its sentence on stale factors. We therefore cannot conclude, in light of the foregoing, that Brockway's right to a speedy trial was violated.

As Judge Kelly persuasively wrote, concurring in *Greer:*

*Giovengo* rule in first-degree murder case, the delay did trigger further inquiry into Pounds' speedy trial claim).

616

Appellant has attempted to paint himself as a victim of court delay, racked by the uncertainty arising from the failure of the court to impose sentence until seven and one half years after post-verdict motions were denied. His silence during that delay, however, proves the illusory nature of the tragic image he paints. Appellant had but to assert his speedy trial right and sentence undoubtedly would have been imposed.

382 Pa.Super. at 144, 554 A.2d at 989. Likewise, Brockway, incarcerated in New York for a separate crime, made no effort to inform the court of his desire to be sentenced. As soon as he was available and asserted the right, he was accommodated.

Judgment of sentence affirmed.