J-S09008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
JESSICA L. GAMROD :
:
Appellant : No. 180 WDA 2018

Appeal from the Judgment of Sentence May 31, 2017
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0000916-2013

BEFORE: PANELLA, P.J., LAZARUS, J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, P.J.: **FILED AUGUST 13, 2019**

Appellant, Jessica L. Gamrod, challenges the judgment of sentence entered in the Washington County Court of Common Pleas, following her conviction for criminal mischief.[1] We affirm.

On the evening of November 23, 2012, Appellant arrived at the apartment of her ex-boyfriend, Frank Tustin. Appellant and Tustin informally shared custody of their young son, and so remained in constant, if quarrelsome, contact. On the date in question, Appellant began pounding on the apartment door and yelling at Tustin to open it. Tustin declined to do so, as Appellant had previously fought with Tustin about his relationship with Celeste Marshall, who was in Tustin's apartment at the time.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3304(a)(5).

Appellant continued banging on the door and shouting for five to ten minutes. During this time, Appellant threatened to slash Tustin's car tires. Tustin warned Appellant not to harm his car, as the apartment building had surveillance cameras. Appellant eventually left, and Tustin and Marshall went outside to confirm Tustin's car was undamaged. Marshall departed a few hours later without further incident.

One or two days later, Marshall noticed a long, jagged scrape running down the passenger side of her vehicle. She told Tustin she believed Appellant had caused the damage. Tustin contacted the manager of his apartment building, who checked the complex's security tapes and alerted Tustin to footage of a woman using keys to scratch Marshall's vehicle. Marshall gave the videotape to police.

Appellant was charged with criminal mischief, and proceeded to a bench trial. Following trial on July 30, 2014, the court convicted Appellant. On Appellant's request, the court ordered a pre-sentence investigation report ("PSI") and delayed sentencing. However, the probation office did not receive the order.

After realizing Appellant had not been sentenced, the court issued a second order for preparation of a PSI on April 4, 2017, and held sentencing shortly thereafter. The court did not impose jail time or probation, but ordered Appellant to pay prosecution costs and restitution of $2,087.69 – the expense Marshall and her insurance company incurred in repairing Marshall's car.

Appellant filed a timely notice of appeal, and this case is now properly before us.

We begin with Appellant's challenge to the admission of the video evidence from the apartment building's parking lot. She claims the video lacked proper authentication, and was therefore inadmissible. We disagree.

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (quotation marks and citation omitted).

"Physical evidence may be properly admitted despite gaps in testimony regarding custody." *Commonwealth v. Witmayer*, 144 A.3d 939, 950 (Pa. Super. 2016) (citation omitted). Objections to the chain of custody are properly directed to the weight of the evidence, not its admissibility. *See id*. Even where a court rules evidence is admissible, the party opposing the admission may still offer other evidence relevant to its weight or credibility. *See* Pa.R.E. 104(e).

Demonstrative evidence, like the videotape here, "is tendered for the purpose of rendering other evidence more comprehensible to the trier of fact." *Commonwealth v. McKellick*, 24 A.3d 982, 986 (Pa. Super. 2011)

(quotation marks and citation omitted). A party offering such evidence must first authenticate it. **See** Pa.R.E. 901(a). "[A]uthentication generally entails a relatively low burden of proof[.]" **Commonwealth v. Murray**, 174 A.3d 1147, 1157 (Pa. Super. 2017) (citations omitted). The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a).

Demonstrative evidence may be permissibly entered into evidence, so long as its proponent establishes that the "evidence fairly and accurately represents that which it purports to depict." **McKellick**, 24 A.3d at 987 (citation omitted). Where a party wishes to authenticate video evidence, "[i]t is not necessary that the maker of the videotape testify to the tape's accuracy; *any witness familiar with the subject matter* can testify that the tape was an accurate and fair depiction of the events sought to be shown." **Commonwealth v. Impellizzeri**, 661 A.2d 422, 428 (Pa. Super. 1995) (emphasis added; citations omitted).

Here, the Commonwealth moved to admit security footage of the parking lot at the time Appellant allegedly damaged Marshall's car. **See** N.T. Trial, 7/30/14, at 21. Appellant objected on the grounds that the maker of the video was not present in the courtroom to authenticate it. **See id**., at 23. In response, the Commonwealth elicited testimony from Marshall that she was familiar with the area pictured in the video. **See id**., at 22. Marshall stated that the camera displayed the side of Tustin's apartment complex, the parking

- 4 -

lot for residents, and the road abutting the building. *See id*., at 23. Marshall also attested that she could see her car in the video, parked parallel to Tustin's car, in the same spot where it was parked on the night of November 23, 2012. *See id*. She affirmed the area in the video looked just as it did on that night. *See id*. Based on the foregoing, the trial court overruled Appellant's objection and deemed the evidence admissible. *See id*., at 24.

Despite Appellant's objection, the Commonwealth was not required to present testimony from the manager of the apartment complex whose cameras recorded the video. Rather, the Commonwealth's obligation was to ensure a witness familiar with the subject matter – Marshall, a frequent visitor to the apartment building – testified that the video was a fair and accurate depiction of events. To the extent Appellant wished to discredit Marshall as an interested party, that argument relates to the weight of the evidence and not its admissibility. We conclude the trial court did not abuse its discretion in admitting the videotape.

Appellant's next challenge is to the sufficiency of the evidence. Rather than objecting to proof of a particular element of the offense, Appellant argues her sufficiency claim in tandem with a weight of the evidence claim, despite acknowledging different standards of review for each. We note that a "challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime,

but questions which evidence is to be believed." ***Commonwealth v. Richard***, 150 A.3d 504, 516 (Pa. Super. 2016) (internal quotation marks and citation omitted).

Insofar as we are able to distinguish between Appellant's sufficiency and weight arguments, we will address these. In her sufficiency challenge, Appellant contests the trial court's finding that she was the perpetrator of the damage to Marshall's car. In Appellant's view, Marshall's claim that she could identify Appellant by the sound of her voice was unsupported by the evidence. We disagree.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. ***See Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Id***. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. ***See id***. "As an appellate court, we do not assess credibility nor do we assign weight

to any of the testimony of record." ***Commonwealth v. Kinney***, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Bruce***, 916 A.2d at 661 (citation omitted).

"A person is guilty of criminal mischief if [she] intentionally damages real or personal property of another[.]" 18 Pa.C.S.A. § 3304(a)(5). This Court has previously held that a witness may testify to a person's identity based on her voice alone. ***See Commonwealth v. Jones***, 954 A.2d 1194, 1197 (Pa. Super. 2008).

At trial, the Commonwealth presented evidence from Celeste Marshall, the victim. Marshall stated she had several previous run-ins with Appellant, including an incident where Appellant allegedly struck Marshall. ***See*** N.T. Trial, 7/30/14, at 28. Marshall asserted Appellant had also sent her previous harassing messages, warning her to stay away from Appellant's ex-boyfriend, Frank Tustin. ***See id***., at 27. Marshall claimed Appellant had also threatened to damage Marshall's vehicle in the messages. ***See id***.

Though Marshall could not recall the exact time, she stated that on the evening of November 23, 2012, she saw Appellant's dark-colored minivan pull into the parking lot outside of Tustin's apartment complex, where Marshall had been spending time with Tustin. ***See id***., at 30. Marshall recognized

Appellant's vehicle after having seen Appellant driving it around the parking lot on several previous occasions. *See id.*, at 14, 31.

Marshall indicated that Appellant came to Tustin's apartment door and began shouting and banging on the door. *See id.*, at 12. Marshall was familiar with Appellant's voice from their previous altercations. *See id.*, at 28. Marshall heard Appellant threaten to flatten Tustin's car tires. *See id.*, at 12.

Tustin warned Appellant not to touch his car, as the apartment building had surveillance cameras in place. *See id.* After five or ten minutes of shouting, Appellant left. *See id.* Tustin and Marshall then went outside to check Tustin's car for damage, but did not examine Marshall's car. *See id.*, at 12, 13. Marshall left Tustin's apartment later that evening, but did not inspect her car for damage at that time either. *See id.*, at 12.

Marshall testified that one or two days later, she noticed the passenger side of her vehicle bore a large, jagged scrape. *See id.*, at 14. Marshall believed Appellant was responsible for the damage, and called Tustin to tell him about the scratch. *See id.*

Tustin and Marshall then contacted Tustin's apartment building manager, who checked the security tapes taken from the building's surveillance cameras. *See id.*, at 16, 17. The Commonwealth introduced a copy of the surveillance tape into evidence. *See id.*, at 21. Marshall confirmed the video showed her vehicle, parked in the spot she had used on the night of November 23. *See id.*, at 23. Marshall identified Appellant as the woman in

the video scratching her car. *See id.*, at 25, 28. Marshall then explained one of the Commonwealth's exhibits was a receipt from the repair estimate she submitted to her car insurance agent. *See id.*, at 19.

The Commonwealth also presented testimony from Police Sergeant Anthony Popeck, who filed a report of the incident. Popeck affirmed he observed damage on Marshall's vehicle, in the form of a "scratch mark all of the way down the passenger's side of her vehicle." *Id.*, at 35. He also stated he reviewed the security tapes from Tustin's apartment complex. *See id.*, at 37. Popeck recounted a telephone conversation he had with Appellant in the course of his investigation. *See id.*, at 36. Appellant admitted to having prior problems with Marshall, and stated she "didn't like [] Marshall messing around with her man[,]" Tustin. *Id.* However, Appellant did not admit to having damaged Marshall's vehicle. *See id.*, at 41.

In her defense, Appellant presented testimony from her stepfather, Joseph Smith, who stated he had been doing repairs on Appellant's vehicle in his shop around the time of the incident. *See id.*, at 45. Smith claimed Appellant's van had been towed to his shop on November 16, 2012, before the incident, but the order he wrote for repairs to the vehicle was dated November 29, 2012. *See id.* Smith also admitted that he believed Appellant had a second vehicle at the time. *See id.*, at 49.

Appellant testified she had been home with her children at the time of the incident. *See id.*, at 55. She stated that while she was familiar with

Marshall, she had not seen Marshall that day or damaged her vehicle. ***See id***. Appellant's husband, Ryan Wingertsahn, also testified that Appellant was home all evening. ***See id***., at 77. Finally, Appellant's former neighbor testified she had seen Appellant between 8:20 and 8:30 p.m. that evening. ***See id***., at 88-89. However, the neighbor stated she had no idea of Appellant's whereabouts before or after that sighting. ***See id***., at 91.

Viewing the above evidence in the light most favorable to the Commonwealth as verdict-winner, we agree the Commonwealth presented sufficient evidence to sustain Appellant's conviction for criminal mischief. While Appellant's counsel elicited a statement on cross-examination that Marshall did not have "a relationship" with Appellant, the evidence clearly shows Marshall was familiar with Appellant and could accurately identify her. ***Id***., at 29. Appellant does not contest any other elements of the offense – that Marshall's personal property was damaged, or that the damage was intentional. Thus, we find she is due no relief on her sufficiency challenge.

We turn to Appellant's claim that her conviction is against the weight of the evidence.

An appellant wishing to challenge the weight of the evidence must properly preserve his claim for review. Such a claim must be preserved orally prior to sentencing, by a written motion before sentencing, or in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A).

We do not review challenges to the weight of the evidence *de novo* on appeal. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. 2012) (citation omitted).

In order to grant a new trial on the grounds that the verdict is against the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*., at 1243-1244 (internal quotation marks and citations omitted). A verdict shocks the judicial conscience when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench[.]" *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted). We note, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Id*., at 581-582 (citation omitted).

Appellant preserved her weight claim for our review in her post-sentence motion. However, as noted above, Appellant's weight argument is carelessly commingled with her sufficiency claim. *See* Appellant's Brief, at 15. Appellant's weight claim reiterates her belief that the surveillance video should

have been accorded no weight because of its allegedly improper authentication. As we have already disposed of this authentication claim above, we will not consider additional authentication claims in the guise of a challenge to the weight of the evidence.

Appellant also asserts the "credible testimony" from Joseph Smith that Appellant's van was in his shop at the time of the incident should have outweighed the surveillance video. Appellant's Brief, at 14. Rather than challenge a distinct abuse of the trial court's discretion, Appellant seeks to have this Court instead reweigh two pieces of evidence presented at trial and decide in her favor. This we decline to do.

Here, the trial court itself examined the surveillance video, and determined it showed a female "similar in stature to [Appellant] intentionally doing damage to [Marshall's] car." Trial Court Opinion, filed 8/24/18, at 7. The trial court also found convincing the footage showing the woman entering a minivan, which Marshall had identified as belonging to Appellant. *See id*., at 10. The court then listened to testimony from Appellant's stepfather, Joseph Smith, that Appellant's minivan was in his shop that week, and found that testimony incredible. *See id*., at 11.

We do not find the foregoing evidence to be "so tenuous, vague and uncertain" that it shocks the conscience of this Court. *Chine*, 40 A.3d at 1243-1244 (citation omitted). Moreover, Appellant presents a false comparison between these two pieces of evidence. In addition to the surveillance video,

the trial court heard and credited extensive testimony from Marshall, regarding her rocky relationship with Appellant. And the court noted Appellant's threats to Tustin and Marshall to inflict car damage on the night of the incident. Thus, we cannot conclude the trial court committed an abuse of discretion in denying Appellant's post-sentence motion.

Finally, we evaluate Appellant's claim that the court erred in denying her request for discharge due to the delay in sentencing.

Pennsylvania Rule of Criminal Procedure 704 provides that "sentence in a court case shall ordinarily be imposed within 90 days of conviction[.]" Pa.R.Crim.P. 704. A court's failure to comply with Rule 704 by holding a sentencing hearing within ninety days does not automatically require discharge. *See Commonwealth v. Null*, 186 A.3d 424, 433 (Pa. Super. 2018). "Discharge is appropriate only when a delay of more than ninety days prejudices the defendant." *Id*. (citation omitted).

This Court does not "look at the sentencing delay in a vacuum." *Commonwealth v. McLean*, 869 A.2d 537, 540 (Pa. Super. 2005). When determining whether discharge is appropriate, we must consider: 1) the length of the delay; 2) the reason for the delay; 3) the appellant's timely or untimely assertion of her rights; and 4) any prejudice to the appellant's interests protected by speedy trial and due process rights. *See Commonwealth v. Diaz*, 51 A.3d 884, 889 (Pa. Super. 2012). "The court should examine the totality of the circumstances, as no one factor is

necessary, dispositive, or of sufficient importance to prove a violation." ***Id***., at 887. (citation omitted). This Court has previously found that even a delay of over two years does not necessarily require discharge. ***See Commonwealth v. Brockway***, 633 A.2d 188, 191 (Pa. Super. 1993) (holding defendant's failure to be sentenced for over two years after conviction does not demonstrate prejudice requiring discharge).

Here, Appellant requested that a PSI report be provided to the court before her sentencing. The court acceded to her request, and ordered the probation office to prepare the report. However, the probation office never received the order. After realizing two years later Appellant's sentence had not yet been imposed, the court issued a second order requesting a PSI and scheduling sentencing proceedings. It was only then that Appellant asserted her right to be sentenced within ninety days under Rule 704 by filing a motion for discharge, which the court denied. The court then imposed a sentence of restitution.

The delay in Appellant's sentencing was lengthy – over two years after the date of her conviction. However, the delay began due to Appellant's request that the court order a PSI, and continued due to a clerical error. During the pendency of sentencing, Appellant failed to invoke her right to sentencing until the court identified the error and issued a second order. This failure to assert her rights militates against a finding that the delay in sentencing caused Appellant any prejudice. ***See id***. at 190-191. Indeed, during the hearing on

her motion for discharge, Appellant failed to demonstrate any prejudice resulting from the failure to timely sentence her. *See* N.T. Hearing, 5/31/17, at 18-19. Thus, based on Appellant's failure to timely assert her rights or prove any resulting prejudice to her rights from the delay, we decline to grant relief on this issue. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2019