MINORA, J.,
Factual Background
On or about May 5, 2013 members of the Scranton Police Department were dispatched by the Lackawanna County Communications Center to the 700 block of Vine Street in the City of Scranton, Lackawanna County, Pennsylvania. The nature of the call was that a male had been shot in this geographic area. Upon their arrival the police found a black male, later determined to be Rashan Crowder, lying in the roadway with a gunshot wound to the chest.
Medical personnel were summoned and arrived at the scene. These personnel unsuccessfully initiated life saving measures. They subsequently transferred Mr. Crowder to Geisinger Community Medical Center. The victim, Rashan Crowder was later pronounced dead at Geisinger.
On May 6,2013 an autopsy was performed by a forensic pathologist on the decedent. The results of that autopsy as noted by Lackawanna County Coroner Tim Rowland indicated that Crowder, the decedent, had sustained two gunshot wounds, one to the chest and one to his right thigh. The cause of death was the gunshot wound to his chest. The manner of death was listed as a homicide. As a result of the initial investigation and the autopsy findings the police began a criminal investigation into this incident.
The police investigation determined that Crowder was a student at Lackawanna College and lived across Vine Street from the site of his death in the Tobin Hall dormitory of Lackawanna College. Numerous witnesses, not all in concurrence, led police to determine what occurred on or about May 5, 2013.
*295 Decedent Crowder was apparently accompanied on that fateful night by a friend named Shaquille Isbell. Isbell was an eye witness to the relevant events. Isbell told police that he was a friend of decedent Crowder and attended Lackawanna College with him.
Earlier that evening Isbell and Crowder attended a house party in the 400 block of Monroe Avenue in Scranton about two blocks from the area of the shooting. There may have been some words exchanged at the party but Isbell and Crowder peacefully left that party and walked to other locations in their Hill Section neighborhood and to a mini mart and returned to their dormitory. After the passage of time Isbell and Crowder left their dormitory and returned again to the mini mart.
Upon leaving the mini mart to return, for the second time, to their dormitory they happened upon a group of males and females on the comer of Monroe Avenue and Vine Street just up the street from the original party earlier that evening. The two groups began to give each other “attitude” and trash talking and insults back and forth. The unfortunate result of this exchange was that a male member of the group produced a handgun firing it at Rashan Crowder striking him in the right thigh. After the shooting, a University of Scranton security car happened to arrive at the scene thus causing the two groups to separate and walk down the 800 block of Vine Street from Monroe Avenue towards Madison Avenue, the location of the Tobin Hall dormitory. During this one block plus walk, words, trash talk and insults resumed.
The arguments continue beyond Madison Avenue on Vine Street to an area in the 700 block of Vine Street near Moir Court. At that point, a second male from the group begins to goad the male into shooting the decedent for *296 a second time. Repeatedly, the second male encourages and urges the first male to fire again. When the second shot occurs, it hits decedent Crowder in the chest fatally injuring him. At that point, the group of males and females all flee the area.
Subsequent interviews and investigation and review of security video revealed that the shooter was our defendant, Ryan Harding. He was determined to be the man holding the gun. The co-defendant, Marlon Clotter was also identified as the male coaxing, encouraging and goading Ryan Harding to fire two shots at decedent Rashan Crowder.
Ryan Harding was bom on May 13, 1995. At the time of this offense on May 5, 2013, Harding had just turned eighteen (18) years of age two days prior to the crime. At the time of sentencing, Harding was nineteen (19) years of age.
Ryan Harding’s Criminal Complaint
As a result of the slaying on May 9, 2014, the City of Scranton Police Department filed two police complaints, one against Ryan Harding and one against Marlon Clotter.
The criminal complaint and subsequent criminal information against Harding alleges that Harding fatally shot Crowder. It charges Harding with murder in the first degree, 18 Pa. C.S.A. §2502(a) and murder in the third degree, 18 Pa. C.S.A. §2502(c) and two criminal conspiracy counts to commit murder in the first and third degree, 18 Pa. C.S.A. §903(a)(l). Other charged criminal conduct includes two counts of aggravated assault, 18 Pa. C.S.A. §2702(a)(l) for the handgun shooting of Crowder in both the right thigh and the chest.
*297 Finally, Harding was charged with two weapons charges: Possession of Firearm Prohibited, 18 Pa. C.S.A. §6105(a)(l) and firearms not to be carried without license, 18 Pa. C.S.A. §6106(a)(l).
On May 21, 2013, Harding was arrested in Syracuse, New York based upon the arrest warrant prepared pursuant to the May 9, 2013 criminal complaint.
Procedural Background
On August 30,2013, Clotter’s preliminary hearing was held before magisterial district judge Sean McGraw. On September 30, 2013 by order of president judge Thomas J. Munley, the undersigned was appointed to preside over this case. On November 7, 2013, discovery deadlines and motion deadlines were set as well as a tentative trial date for August of 2014. On November 6, 2013, the district attorney for Lackawanna County issued a four count bill of information against Clotter. Defendant Clotter was formally arraigned the same day. Defendant Harding who had initially fled was later arrested in Syracuse, New York.
On January 15,2014, defense counsel filed an extensive omnibus motion on behalf of defendant Clotter. Defendant Harding joined in as well as filing his own motion. The Commonwealth responded to the omnibus on February 4, 2014. On July 3, 2014, the court decided both Harding’s and Clotter’s voluminous omnibus motion in a lengthy consolidated opinion.
On November 5, 2014, a joint sentencing hearing was held for both defendant Clotter and the shooter, our defendant Ryan Harding. After consultation with the court reporter, it was determined that this joint proceeding began on November 5, 2014 at 10:01 a.m. and concluded at 1:30 p.m. It is most unusual for a sentencing proceeding *298 to take three and one half hours even if a joint one. In this case, it was done to allow extensive victim/family/ friend testimony and also to allow substantial defendant allocution. The court covers its reasons for the sentencing scheme for defendant Harding starting at page 121 to page 192, N.T. Proceedings of Sentencing, 11/5/14.
Subsequent to sentencing, on November 14, 2014, counsel for defendant Harding filed a reconsideration of sentence. That motion was denied on November 17, 2014 by order of this court. Defendant Harding’s notice of appeal to the Pennsylvania Superior Court was filed on December 15,2014 and their concise statement of matters complained of on appeal was filed on February 20, 2015, thus giving rise to this opinion.
Appellate Arguments of Defendant Harding
A. Did the Trial Court err and abuse its discretion by imposing a manifestly excessive sentence at the highest end of the standard range of the Pennsylvania Sentencing Guidelines, by failing to consider the relevant sentencing criteria of the Pennsylvania Sentencing Code including, but not limited to, the personal characteristics of the defendant, the rehabilitative needs of the defendant and the actual need for the protection of the public, the presence of mitigating circumstances and, then, failing to state sufficient reasons on the record for the sentence imposed?
B. Did the Trial Court err and abuse its discretion by imposing a manifestly excessive sentence at the highest end of the standard range of the Pennsylvania Sentencing Guidelines by solely focusing on the defendant’s immature and imprudent request that the court, on the record, identify the statute under which he was being sentenced, thereby interpreting that the defendant lacked an ability to *299 take responsibility for his actions and show remorse or did not respect the authority of the court, in violation of the defendant’s right to allocution?
C. Did the Trial Court err and abuse its discretion in failing to run the defendant’s sentence for firearms not to be carried without a license concurrent to the sentence imposed with regard to murder of the third degree where the aggregate sentence fails to abide by the goals and norms of the Pennsylvania Sentencing Code and is not justified when the appropriate sentencing criteria, set forth in Issue A, are considered?
Legal Standards
A. Did the Trial Court err and abuse its discretion by imposing a manifestly excessive sentence at the highest end of the standard range of the Pennsylvania Sentencing Guidelines, by failing to consider the relevant sentencing criteria of the Pennsylvania Sentencing Code including, but not limited to, the personal characteristics of the defendant, the rehabilitative needs of the defendant and the actual need for the protection of the public, the presence of mitigating circumstances and, then, failing to state sufficient reasons on the record for the sentence imposed?
B. Did the Trial Court err and abuse its discretion by imposing a manifestly excessive sentence at the highest end of the standard range of the Pennsylvania Sentencing Guidelines by solely focusing on the defendant’s immature and imprudent request that the court, on the record, identify the statute under which he was being sentenced, thereby interpreting that the defendant lacked an ability to take responsibility for his actions and show remorse or did not respect the authority of the court, in violation of the defendant’s right to allocution?
*300 Both arguments A and B are addressed to the court allegedly abusing its discretion in sentencing. Argument A alleges an abuse of discretion for imposition of a sentence at the highest end of the standard range, “where there are no reasons stated sufficiently on the record justifying the sentence imposed.” Argument B alleges the sentence imposed was manifestly harsh and excessive and an abuse of discretion and a violation of defendant’s right to allocution? Since both allege an abuse of discretion violation and for similar factual reasons we shall address both arguments A and B concurrently.
It bears noting initially that this court does not concede for one moment the stated rationale of defendant that his “imprudent” allocution impacted on the court’s choice of sentencing alternatives in this case. Further, we challenge defendant to cite to anyplace in the record where such a baseless allegation is supported by the transcript of record. Previous counsel’s belief that defendant’s allocution improperly and/or inaccurately impacted on Harding’s sentence is without foundation in the pleadings, or within the transcript or record.
As further background, this sentence being challenged is as a result of a guilty plea by defendant Harding. It is therefore axiomatic that only three theories of appeal are given to defendant. First, that the plea was not knowing or voluntary. Second, that the court lacked jurisdiction, and third, that the sentence imposed was illegal.
Since the arguments regarding the first and second theories are not being raised, we will allow the third reason, attacking the legality of the court’s sentence, to guide our reasoning.
In Com. v. Lee, 876 A.2d408, 411 (Pa. Super. 2005), the *301 Superior Court noted that, “...Appellant’s right to appeal the discretionary aspects of his sentence is not absolute.” Further, “It is well-settled that a ‘claim that the sentence imposed by the trial court was manifestly excessive is a challenge to the discretionary aspects of the sentence.’” Id. at 411.
“The Lee court goes on to cite Com. v. Bishop, 831 A.2d 656, 660 (Pa. Super 2003) for the proposition that two requirements must be met prior to reaching the merits of a challenge to the discretionary aspects of a sentence. First, the appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence, (citations omitted). Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the sentencing code ... 42 PA. CONS.STAT.ANN §9781(b). In order to establish the existence of a substantial question, the appellant must show, ‘actions by the sentencing court inconsistent with the sentencing code or contrary to the fundamental norms underlying the sentencing process.’”
Com. v. Bishop, 831 A.2d at 660; Com. v. Lee, 876 A.2d at 411.
Assuming those prerequisites are met, the appeals court must then engage in a four pronged analysis
“[W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa. R.Crim.P. 1410 [now rule 720]; (3) whether appellant’s brief has a fatal defect, PA. R.A.P. 2119(a); and (4) whether there is a *302 substantial question that the sentence appealed from is not appropriate under the sentencing code, 42 PA. C.S.A. §9781(b).”
Com. v. Evans, 901 A.2d 528, 533 (Pa. Super. 2006); Com. v. Antidormi, 84 A.3d 736, 759 (2014).
Since the analysis is within the purview of the appeals court, we will presume these matters are in order and we will address defendant’s issues on their merits.
The notes of transcript of sentencing from November 5, 2014, beginning at page 120-130 discuss the nature of the plea bargain and guilty plea. Thereafter, the court’s concern with Harding’s extensive juvenile record is discussed along with his juvenile incarceration at Glen Mills. Thereafter, recent violations of Harding at Luzerne County Prison were explored at N.T. pp. 158-160. That pattern of repetitive involvements with the juvenile justice system along with his relative youth upon completion of any sentence were also discussed. The defendant is a product of a supportive home life. See N.T. Proceedings of Sentencing 11/5/14 at 154. He has the benefit of two months rehab at Clearbrook Lodge and about eighteen (18) months at Glen Mills plus intensive juvenile probation upon release. Despite all of these opportunities, Harding returns to his old habits that got him in trouble in the first place. The obvious task is formulating a sentence that is consistent with the protection of the public and their safety. Especially, when defendant Harding was active in retrieving, aiming and shooting the weapon used two times. Id., at 160-165, 173-176. Harding is the guy who brings a gun to a fist fight.
In addition, the gravity of the offense is in need of analysis. Third degree murder and weapons offenses are *303 serious felonies, but even more so when committed by Harding, a defendant under intensive juvenile supervision without any legal right to possess let alone use weapons and ammunition. We remain guided by the offense gravity score but the nature of the offense needs to be recognized and the opportunities to avoid it.
The encounter leading to the first shot to Crowder’s right thigh occurred on Monroe Avenue and Vine Street. The defendant Harding and his group could have retreated down Monroe Avenue to avoid the situation and also had the means and opportunity to retreat throughout.
Other avenues of retreat existed in the alley west of Monroe Avenue between Monroe Avenue and Madison Avenue. A third opportunity to retreat also existed on Madison Avenue itself. Finally, they fled in Moir Court after the second and fatal shot. Four opportunities to avoid the confrontation were squandered by the defendant. These opportunities to retreat were being encouraged by some in defendant’s group. Even if defendant initially failed to consider retreat he was encouraged to walk away by Corey Williams and instead he stayed and encouraged escalating the use of the gun to increase the violence and danger rather than decrease it. Such poor judgment must be considered as this court believes it persists within the defendant to the date of sentencing.
The profound impact of taking the life of the victim Rashan Crowder as equipped (weapon) and persisted by Harding cannot be understated. The extensive testimony by the victim’s family and friends was both moving and remarkable. This crime had an extensive impact on the college community at Lackawanna College in Scranton as well as the victim’s home town of Harrisburg, *304 Pennsylvania.
The sentence as fashioned by the court also tries to address defendant’s potential for rehabilitation. It is a twenty-three and one half year minimum. If defendant behaves in prison and takes advantage of prison’s educational opportunities he could be out long before his forty-seven year maximum. At his minimum, he would be approximately forty-one years old, still shy of middle age. In being on parole, it is hoped that the structure of future parole supervision out of jail would afford Harding the discipline needed to thrive on the outside. Tellingly, this crime occurred while on juvenile supervision from Glen Mills. It is hoped that a future parole experience will benefit defendant from this experience and be more successful. The long tail hopefully insures defendant remains motivated to continue to correct his past behavior and lifestyle and avoid returning to his criminal ways.
With these rationales in mind, we must now address the concept of abuse of discretion. The court stands accused of abusing its’ sentencing discretion. The cases require that the sentencing court’s advantageous perspective of viewing the defendant not be disturbed absent a, “manifest abuse of discretion.” Com. v. Smith, 543 Pa. 566, 570-571, 673 A.2d 893, 895 (1996).
As stated in Smith, an abuse of discretion is more than a mere error in judgment. The record must show the sentencing court’s judgment was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will or such lack of support as to be clearly erroneous. Grady v. Frito-Lay, Inc., 576 Pa. 546, 839 A.2d 1038, 1046 (2003).
The rationale behind the broad discretion given to the trial court and the appellate court’s deferential standard *305 of review is, as noted, the sentencing court is in the best position to determine the proper penalty for the particular offense based upon and evaluation of the individual and the circumstances before it. Com. v. Jones, 613 A.2d 587, 591 (Pa. Super. 1992), en banc. The sentencing court is recognized in the case law to be in a superior position to “...view the defendant’s character, displays of remorse, defiance or indifference and the overall effect of the nature of the crime.” Id., at 591.
The sentencing code at 42 Pa. C.S.A. §9721(b) illustrates the legal sentencing options available to the court. It also lists the factors the court should consider such as protecting public safety, the gravity of the offense, the impact of the life of the victim and the community and the rehabilitative needs of the defendant. 42 Pa. C.S.A. 9721(b). Thus, sentencing is individualized.
Furthermore, there are sentencing guidelines that the court must also consider. The guidelines are just that, guidelines for the court to consider. They are not mandatory but a deviation from these guidelines must be accompanied by a written explanation justifying and explaining the deviation. The core focus of such a review of a guideline deviation explanation is whether the individual sentence remains reasonable. At 42 Pa.C.S.A. §9781(c)(3), it is explained that the appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if the appellate court finds, “(c) (3), the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.” Emphasis added. Here, the court remained within the sentencing guidelines.
In making this reasonableness inquiry, the statute at 42 Pa. C.S.A. §9781(d) directs the appeals court to review, *306 “(1) The nature and circumstances of the offense and the characteristics of the defendant.” We have shown the defendant’s bringing a gun to a fist fight, retrieving the gun, twice employing the gun’s use and ignoring opportunities to retreat that were pointed out to him. We also showed defendant’s extensive record and recent prison misconduct. “(2) The opportunity of the sentencing court to observe the defendant including pre-sentence investigation.” 42 Pa. C.S.A. §9781(d)(2). We have already noted the lengthy sentencing hearing on November 5, 2014 wherein a lengthy colloquy with defendant Harding was conducted. We noted we read the pre-sentence report as well as all last minute filings and letters. “(3) The findings upon which the sentence was based.” 42 Pa. C.S.A. §9781(d)(3) these are noted in the notes of transcript as well as earlier in this opinion. Finally, “(4) The guidelines promulgated by the commission” are noted on the first page of the pre-sentence report. 42 Pa. C.S.A. §9781(d)(4). Both 42 Pa. C.S.A. §9781(c) and (d) prohibit a sentence outside of the guidelines which is unreasonable.
As noted in the case of Com. v. Walls, 592 Pa. 557, 926 A.2d 957, 963 (2007), unreasonable is a term not defined by statute but in Walls, our Supreme Court notes that “unreasonable” commonly connotes a decision that is “irrational” or “not guided by sound judgment.”
Given the scheme of individual sentencing without the statute defining “unreasonable” the Walls court concludes that the concept of unreasonableness is to be, "... a circumstance-dependent concept that is flexible in understanding and lacking precise definition.” Id., at 963.
The Walls court determined by applying the guidelines under 42 Pa. C.S.A. §9781(c)(3) and (d) and 42 Pa. C.S.A. §9721, we can be guided upon a reasonableness inquiry *307 without fashioning any concrete rules to govern such an inquiry.
As the Walls court notes, the guidelines are advisory and non-binding. The sentencing court has no duty to impose a sentence considered appropriate by the commission. The guidelines need only to be considered by the sentencing court and to insure such consideration is substantive, the sentencing court must explain their departure from such guidelines. The guidelines are but one factor among many to be considered as per the Sentencing Code. Id., at 964, 569.
Since these guidelines are not mandatory, the sentencing court retains broad discretion in sentencing matters and therefore, they are empowered to sentence outside the guidelines although with an accompanying explanation as to why the guidelines are not reasonable in a given case. Id., at 569, 570, 964. The Wall court concludes that in essence, the sentencing guidelines are advisory guideposts that are valuable as providing an essential starting point. The guidelines are to be respected and considered however, they recommend rather than require a particular sentence.
Since we hold that defendant Harding was given an individualized sentence based upon the relevant sentencing code factors as well as with the respect and consideration of the guideline recommendations we conclude that upon review of the record, the post sentence motion and the Pa. R.A.P. 1925 issues, the court has fashioned a reasonable individualized sentence for this defendant not in any way abusing its discretion to so do.
C. Did the Trial Court err and abuse its discretion in failing to run the defendant’s sentence for firearms not to be carried without a license concurrent to the sentence *308 imposed with regard to murder of the third degree where the aggregate sentence fails to abide by the goals and norms of the Pennsylvania Sentencing Code and is not justified when the appropriate sentencing criteria, set forth in Issue A, are considered?
Once again, an allegation within this statement of matters complained of states a position as fact to which this court disagrees. The statement is that by sentencing defendant Harding consecutively on his weapons charge, rather than concurrently that decision by this court somehow creates a sentence, where the aggregate sentence fails to abide by the goals and norms of the Pennsylvania Sentencing Code and is not justified when the appropriate sentencing criteria set forth in Issue A are considered.”
Harding fails to note specifically what goals and norms he is considering. Harding also further fails to note how this court’s sentence fails to abide by the unspecified goals and norms not noted.
In the case of Com. v. Austin, 66 A.3d 798 (Pa. Super. 2003), the Superior Court noted that state law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentence being imposed at the same time. This reflects our factual scenario.
The Austin, supra, court goes on to note that any challenges to the exercise of this discretion ordinarily does not raise a substantial question that a resentence is appropriate under the sentencing code as is required for a court to reach the merits of a challenge to the discretionary aspects of a sentence. See also Com. v. Brisk, 13 A.3d 526 (Pa. Super. 2011) for a similar result.
In Com. v. Greer, 554 A.2d 980 (Pa. Super. (1989), the Superior Court found that consecutive sentences for *309 rape and robbery which were also to ran consecutively to sentences in a factually similar but unrelated case was not an abuse of discretion. The rationale for their conclusion that such consecutive sentences were not an abuse of discretion was articulated. The court noted that the sentences were within the statutory limits and were not manifestly excessive. The judge referenced the defendant’s extensive criminal record and noted there was no anticipated rehabilitation of the defendant. These were deemed adequate reasons for the consecutive sentence.
As noted above, Harding was a juvenile offender who had been incarcerated and was under intensive juvenile probation at the time the murder and weapons charges occurred. Harding had prison violations while awaiting sentence in this case. He chooses to at least associate with gang members, and his prospects for rehabilitation were at best suspect. Greer is substantially similar to our case.
Defendant Has Failed to Submit a Substantial Question
First it should be noted as per pages 190-191 in the N.T. of Proceedings of Sentencing on November 5, 2014, neither the sentence for murder in the third degree at 18 Pa. C.S.A. §2502(c) nor the sentence for weapons or firearms violations at 18 Pa. C.S.A. § 6106(a)(1) exceeds the standard guidelines as calculated relative to defendant Harding.
As per the notes of transcript noted above, the standard guidelines for the murder three were one hundred and thirty-eight (138) months to two hundred and forty (240) months minimum with a forty (40) year statutory maximum. Harding’s sentence for the murder three was a minimum of two hundred and forty (240) months to a maximum of four hundred and eight (480) months. *310 Regarding the weapons charges, defendant Harding’s standard range was thirty (30) months to forty-two (42) months minimum. The sentence imposed was a forty-two (42) month minimum to eight-four (84) months maximum consecutive to the murder three.
The defendant’s objection is to the consecutive nature of the sentences. However, the defendant fails to raise a substantial question suitable for review. In the case of Com. v. Antidormi, 84 A.3d 736, 760 (Pa. Super. 2014), the Superior Court noted that in a similar challenge, “Of these offenses only the trial court’s sentence pursuant to subsection 2705 falls out of the standard guidelines. Id.; [Com. v. Robinson, 931 A.2d 15, 26 (Pa. Super. 2007)]. Therefore, we conclude that appellant has presented a substantial question only with regard to his sentence under subsection 2705. See Robinson, supra. Emphasis added. In the interests of completeness, we shall also do an analysis regarding an abuse of discretion in the unlikely event that the argument of the sentence being contrary to fundamental norms is accepted.
Finally, in Com. v. Lewis, 911 A.2d 558 (Pa. Super. 2006) the court held that a claim that a sentencing court failed to consider certain mitigating factors also fails to raise a substantial question suitable for review.
Abuse of Discretion Analysis
We have noted at page 9, supra, that it is well settled that with regard to the discretionary aspects of sentence there is no automatic right of appeal per Com. v. Austin, 66 A.3d at 807-808 and Com. v. Antidormi, 84 A.3d at 759.
The four part analysis is noted there at page 9 and need not be repeated here. However, the four parts are linked by the conjunction “and” meaning all four elements are *311 required. Further, the fourth element is, “(4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code 42 Pa. C.S.A. § 9781(b).” As noted above, this element cannot be proven per Antidormi and Robinson, supra, since the court’s sentence as imposed never departed from the standard range minimum, thus it never presents the required substantial question fourth element.
Nevertheless, we will address substantively the allegations that the court abused its discretion and violated norms of sentencing despite remaining in the standard range of mínimums on all charges.
The standard of review in challenging the discretionary aspects of a sentence are well settled. Per Antidormi, supra. at 760. The standard of review is articulated as follows:
“Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Id.

A review of the transcript of sentence shows that the court sentenced on all counts within the standard range therefore it seems beyond cavil that you cannot argue that the court ignored or misapplied the law.
Further, a similar argument can be raised to rebut *312 defendant’s argument that the court exercised its judgment for reasons of partiality, bias or ill will or arrived at a manifestly unreasonable decision.
Essentially, the court has three general options when considering a sentencing decision. Per the non-binding guidelines, the court can sentence a defendant in the mitigated range, the standard range or the aggravated range. In seeking to discern a sentencing court’s reasonableness, we look to the four factors from 42 Pa. C.S.A. §9781(d).
The nature and circumstances of the offense and the character of defendant Harding are dealt with in the sentencing transcript. The file from adult probation and parole, which was not just read but studied intently by the court, gave us a detailed background on Harding. This information regarding juvenile activity was calculated into Harding’s prior record score. The nature of his offenses led to calculation of his respective offense gravity scores. Those calculations lead to the sentencing guidelines. The court was guided by and stayed within the standard range of the sentencing guidelines.
As the sentencing court, we have had numerous opportunities to observe the defendant. 42 Pa. C.S.A. §9781(d)(2). We had the defendant appear before us briefly on November 6, 2013 for his formal arraignment and we had the defendant Harding before us on November 5, 2014 for the three plus hours of sentencing procedure. A portion of those proceedings was a one-on-one colloquy between the court and the defendant. All of this being supplemented by a pre-sentence report and last minute filings and letters. These opportunities to observe and interact with Harding, gave the court more than adequate time, background and observation to join the defendant *313 and his character into its sentencing decisions.
Per 42 Pa. C.S.A. §9781(d)(3), the court articulated the findings upon which its sentence was based. On page 121 of the sentencing transcript of November 5, 2014, we called the Harding case. See N.T. of Proceedings of Sentencing 11/5/14,121.
The Commonwealth articulated how Harding’s conduct on the date of the crime showed hardness of heart and indifference to the value of human life. Id., 122.
Going back to the misjudgment of going elsewhere to retrieve the gun, they bring a gun to a fistfight. They had no need to go back and seek out a confrontation but Harding carrying the gun made that poor choice. Then there is a cursory reference to a gang affiliation which the court disregarded because Harding denied it as a poor judgment in his past and not reflective of his present. Id., 122-123.
That leads to “disrespect” as being the rationale for the shooting. At the first shot, the gun jams and Harding recycles the shell and shoots Crowder in the right thigh. Two chances to reflect therein. The gun jams, does Harding take that as an opportunity to back away? No. He clears the gun, recycles the shell into the chamber and shoots Crowder in the right thigh. He has no regrets or PTSD from shooting a human being. He takes none of the geographical opportunities to leave it at that. He continues down the street and fires a second fatal shot. Id., 124-125).
By the age of fourteen (14) years Harding is committing house burglaries. Id., 127. He was sent to Glen Mills, a juvenile facility, to try to get him to turn his life around. He is then on intensive juvenile probation when this crime occurs. Once again, an opportunity to change a bad situation into a chance to improve it and Harding makes *314 the wrong choice, making a serious situation worse. These are Harding’s choices. Id., 128-129.
On page 131, defense counsel shows that Harding’s murder charge carries and offense gravity score (OGS) of fourteen (14), his weapons charge carries an OGS of nine (9) and both carry a prior record score of three (3). Id., 131. The standard range for third degree murder is one hundred and thirty-eight (138) months to two hundred and forty (240) months minimum. Mitigated range is one hundred and twenty-six (126). On the firearms charge, the mitigated range is eighteen (18) months and the standard range is thirty (30) to forty-two (42) months minimum. From page 132 to page 138, the defense presented their version of the facts largely from the presentence report. Subsequent to that, they argued that defendant’s background justifies leniency from the court.
At page 147-149 N.T. 11/5/14, the defendant began to express his remorse to the victim’s family and friends gathered in court. In that apology, he argues his acts were reckless bom of fear and of the victim and not an intentional act. The court’s view of this explanation was that it was not credible for three reasons. First, Harding voluntarily retrieved his weapon. Second, he had four avenues of retreat if he was tmly scared and this would eliminate the need to fight. Third, the defendant fired his weapon twice with a possible third unsuccessful attempt. These weapon discharges were about one and a half blocks apart. A University of Scranton police car happened by and interrupted this scene. This afforded Harding more than adequate time to reflect on his actions and change his behavior and if he was not disposed to do so Corey Williams urges Harding to leave the situation. Id., 147.
None of these opportunities for avoidance nor mitigation *315 were pursued by Harding and when suggested, such a less malignant course of action was overruled by Harding. The final insult to the facts occurred at N.T. 11/5/14 p. 150 wherein our armed defendant Harding characterized the physically larger victim as the aggressor. Line 6-7, pg. 150, “The victim was the aggressor, not me.”
The court overtly challenged Harding’s characterization of the victim at N.T., 11/5/14, p. 150-151. Defense counsel said at N.T. 11/5/14, p. 152 that defendant’s version of the conduct still equates with the third degree murder guilty plea since Harding’s conduct showed, “...recklessness, hardness of heart all those things Attorney Klein talked about in his opening remarks.” Lines 8-9 and indifference for human life in obviously shooting and firing a gun at another individual. Id., 1521ns. 12-16.
Despite a stable parent situation at N.T. 11/5/14, p. 154 Ins. 16-25, Harding made poor substance abuse choices N.T. 11/5/14, p. 153. He had two (2) months at Clearbrook and eighteen (18) months at Glen Mills to make better decisions and choices but when released on intensive probation, he commits this act. Id., 155-156.
We accept defendant Harding’s denial of a current membership in the Crips, but he still has to explain current prison misconduct at N.T. 11/5/14, p. 158-160 while being held in the Luzerne County Correctional Facility.
Further, defendant Harding gives his version of events in a dialogue with the court from page 162 through 176 N.T. 11/5/14. He also tries to convince the court that his life is “going good” before this. Id., 179 in. 18. The court challenged Harding on this “good” view at N.T. 11/5/14 p. 179-181.
Finally, from N.T. 11/5/14 p. 182-190 Harding seeks *316 the court’s authority to sentence him which was explained though probably not to Harding’s satisfaction. Then per 42 Pa. C.S.A. §9781(d)(4) sentences within the standard range of the guidelines are imposed. See Id., 190-192. The sentences imposed are imposed consecutively and also in accord with 42 Pa. C.S.A. §9781(c) and (d) which prohibit a sentence outside of the guidelines which is unreasonable.
The court reviewed defendant’s age, prior criminal record (juvenile), personal characteristics and potential for rehabilitation per Antidormi, supra, at 761. Due consideration was given to the statutory considerations, the sentencing guidelines and the defendant’s personal characteristics and his potential for rehabilitation. When doing so, a pattern of behavior emerged wherein the defendant chose to hang with the wrong type of people. Defendant chose to use the wrong type of substances. Defendant made choices post incarceration as a juvenile and while on intensive probation to reconnect with the wrong types of people. Defendant also made the choices to violate probation by the use of alcohol, drugs and carrying a weapon and ammunition. Once arrested, after his flight from our area to Syracuse, he continued to have misconducts in prison. Defendant directs us to his graduation from high school while in jail and his college applications calling it “all good” while ignoring the bad.
We make no judgment as to the college applications contemplated nor the need to finish high school in jail rather than in a normal setting, but what does emerge is a young man who chooses to do what he pleases, when he pleases, how he pleases and without regard for the rule of law or the constraints of probation. His behavior prior to this offense *317 and up to sentencing time, including rationalizing his prison misconduct while awaiting sentence, persuades this court that the defendant has adopted a posture of behavior that is self-centered, self-directed and self-rationalizing. All this with little or no serious regard for the life he took when he chose to shoot an unarmed victim two times at two different locations and lots of time to reflect upon his conduct during the commission of these crimes. This even to the point of rejecting the common sense advice to let it go offered by Corey Williams.
It is respectfully submitted that the court has imposed an appropriate sentence given the most serious nature of the offense. Defendant Harding made a conscious, reasoned decision to discharge his weapon at two separate sites, two separate times towards an unarmed victim, Rashan Crowder who died as a result. Harding had a plethora of opportunities to defuse the situation if his fear was genuine, but he knew he had a gun and he chose two times (at least, excluding gum jams) at two sites to bring a gun to a fistfight.
He was not in the heat of the moment. They walked approximately one city block to a block and one half between firings and Harding had time to ignore sound advice to depart from the situation. Harding chose to do it his way when he wanted and where he wanted and how he wanted. However, he will not get what he wanted from this court.
The sentence was imposed with thoroughness, thought and extended dialogue with Harding and his counsel. There is no evidence of bias, prejudice or improper motive. There is sufficient evidentiary basis within the record to justify the sentencing decisions made. There is no real substantial question that can form the basis for Harding’s *318 appeal. There are no violations of the sentencing code nor is it contrary to fundamental norms which underline the sentencing process. This is especially so since all sentences are in the standard range. Accordingly, the trial court respectfully requests affirmance.