J-S76008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| YASIN EL AMAN SHAKIR, | |
| Appellant | No. 198 WDA 2018 |

Appeal from the Judgment of Sentence Entered April 26, 2016
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0001882-2011

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 22, 2019**

Appellant, Yasin El Aman Shakir, appeals *nunc pro tunc* from the judgment of sentence of an aggregate term of 13½ to 27 years' incarceration, imposed after he was convicted of, *inter alia*, attempted murder and aggravated assault.  We affirm.

Briefly, in this appeal, Appellant contends that the trial court abused its discretion by resentencing him to the same term of incarceration that it had originally imposed for his attempted murder conviction, despite that the court had considered an incorrect Sentencing Guideline range in fashioning his initial term of incarceration for that offense.  Appellant also argues that the court's application of the deadly weapon sentencing enhancement was illegal under ***Alleyne v. United States***, 570 U.S. 99 (2013), and ***Apprendi v. New Jersey***, 530 U.S. 466 (2000).  In assessing these claims, we have reviewed

the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the thorough opinion of the Honorable John P. Dohanich, a Senior Judge on the Court of Common Pleas of Beaver County. We conclude that Judge Dohanich's well-reasoned opinion accurately disposes of the issues presented by Appellant. Accordingly, we adopt his opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2019

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF :
PENNSYLVANIA :
: No. 1882 of 2011
v. :
:
:
YASIN EL AMAN SHAKIR :

MEMORANDUM OPINION

DOHANICH, S.J. May 10, 2018

The petitioner, Yasin El Aman Shakir, has appealed the judgment of sentence entered on December 20, 2017, in which the court: (1) granted his post-sentence motion of July 17, 2017, in part, correcting the sentencing guidelines utilized for the court's original sentence order of October 15, 2012 for the offense of attempted murder; (2) refused his request to not apply the deadly weapon used enhancement on the charge of attempted murder; and, (3) denied his request for a modification of the sentence on the charge of attempted murder in the sentence orders of October 15, 2012 and April 26, 2016, using sentencing guidelines without consideration of the deadly weapon used enhancement. Shakir subsequently filed a post-sentence motion on December 29, 2017, alleging that the court abused its discretion in imposing an identical sentence on the charge of

App. C

attempted murder thus displaying vindictiveness toward him, and incorrectly utilized the deadly weapon used enhancement for the offense of attempted murder. The court denied Shakir's post-sentence motion on January 23, 2018. Timely notice of appeal was filed by Shakir on February 1, 2018. By order entered February 13, 2018, Shakir was directed to file a concise statement of matters complained of on appeal to which he complied on February 20, 2018.

In his concise statement, Shakir sets forth the following two complaints on appeal:

1. The Court abused its discretion at the time of resentencing by imposing the exact same sentence previously imposed, with the intention of maintaining the integrity of the original sentence from April 26, 2016, which was later vacated because that sentence was imposed using the wrong sentencing guidelines. By reimposing the same sentence, the Court has indicated a lack of willingness to base Shakir's sentence on the appropriate guidelines, and instead displayed a vindictiveness against Shakir by imposing a sentence without clear reference to the appropriate guidelines, which is an abuse of the Court's discretion. *Commonwealth v Barnes*, 167 A.3d 110, 122-123 (Pa. Super. 2017).

2. The sentencing court incorrectly imposed a sentence using the guidelines including the deadly weapons enhancement (DWE), where the jury did not find as a fact that a deadly weapon was used, and where the application of that fact triggered enhanced guidelines, resulting in a sentence which violated Shakir's fundamental right to due process and the protections afforded by the Sixth Amendment, and which sentence was illegal. *Alleyne v. United States*, 133 S.Ct. 2151 (2013), and *Apprendi v New Jersey*, 530 U.S. 466 (2000);

2

The court submits this opinion in support of its denial of Shakir's post-sentence motion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, 42 Pa. C.S.

The facts established by the record in the trial of this case are set forth in this court's memorandum opinion entered March 16, 2013, as follows:

In the early evening hours of July 13, 2011, Tomara Scott, her friend Robin Reddix, and three males—Jiwan Bailey, Razaun King and the defendant, Yasin El Aman "Moosie" Shakir—engaged in conversation outside of Scott's residence on Chaske Street in Penn Hills, Allegheny County, "to go to hit a lick" (meaning to take property belonging to someone else). A plan was developed for the robbery of a bar in Aliquippa, Beaver County. Scott, who had previously resided in Aliquippa for a number of years and was the only person familiar with the area, suggested that the establishment known as "The Outkast Bar" would be an easy target. Later in the evening, Scott, accompanied by Reddix, Bailey, King and the defendant, drove her automobile from Penn Hills to Aliquippa. During the trip, the five occupants further discussed the planned robbery. Upon entering Aliquippa, Scott parked her vehicle outside The Outkast Bar, and Scott and Reddix entered the bar to have a couple drinks in order to determine the feasibility of implementing their plan. While the women were in the bar, the three men walked around the neighborhood and later returned to the vehicle to await the females. Near to closing time, Scott and Reddix exited the bar and reconvened with the three men at the car where they spoke of whether to proceed with the robbery of the bartender. The women observed that the owner of the bar had been present and possessed a weapon. Upon further discussion, the plot to rob the bartender was abandoned, causing Bailey to become agitated at having come to Aliquippa for naught. They all entered Scott's vehicle intending to return to Penn Hills.

3

While driving from the area of the bar at approximately 1:40 A.M. on July 14, 2011, the occupants of the automobile observed two men—Lucien Roberts and Brian Elmore, Jr.—walking up Fifth Avenue hill. Scott proceeded to the bottom of the hill, stopped the vehicle, turned to Bailey and said, "Jiwan, there you go." Bailey exited the vehicle and the defendant followed. King remained inside the vehicle to complete a text message and exited a short time later. Bailey, King and the defendant approached Roberts and Elmore. King observed the defendant retrieve a silver handgun from his waist. The defendant told Roberts and Elmore to "take it off" or "throw it off" (meaning "give me whatever you got"). Elmore responded, "beat it, get out of here". Roberts initially observed the defendant point his gun at Elmore. In response, Roberts retrieved his .45 caliber semi-automatic pistol from his waist as Bailey directed his weapon at Roberts. Nearly simultaneously, shots were fired by both the defendant and Roberts. King ran and hid behind a telephone pole and did not observe the shooting, although he heard gun fire and saw flashes from the firing of the weapons. Roberts, who possessed a license to carry a firearm and whose weapon was properly registered to him as the owner, fired three or four rounds before he was tackled by Bailey, who attempted to take the pistol from Roberts. In the struggle that ensued between Roberts and Bailey, Roberts fired approximately five more shots, three of which struck Bailey. Elmore, who had been drinking that night and was somewhat intoxicated, fled across the street behind a nearby garage; however, he was struck by a total of six bullets—two in the right leg, one in the right thigh, one in the left buttocks and two in the left hand. Elmore indicated that he was hit with the first shot as he stepped off the curb into the street. He was subsequently transported to UPMC Presbyterian Hospital for treatment. Elmore remained in the hospital for two or three days during which he underwent surgery on his left hand, including the insertion of a rod. As of the date of trial, he was unable to completely bend a finger on his left hand. None of the bullets were surgically removed from Elmore's body. Although not struck by any gun fire, Roberts found two bullet holes in the basketball shorts he was wearing. Upon extricating himself from Bailey's grasp, Roberts returned to his feet, fled to the top of the hill and called the police.

4

Roberts testified that the entire incident lasted approximately six minutes.

The defendant returned to Scott's waiting vehicle. King, being unfamiliar with the area, left the scene and came upon two individuals from whom he borrowed a cellular telephone which he utilized to call his own cellular telephone located in Scott's vehicle. Reddix answered the call. Scott, along with the defendant and Reddix, proceeded to King's location, at which time he entered the car. King inquired as to Bailey's absence and condition. The defendant replied that he thought Bailey had tackled Roberts and ran from the scene. While in the vehicle, King again observed the silver firearm in the left hip area of the defendant. King testified that none of the other occupants of the vehicle possessed a firearm. Roberts described the defendant's weapon as being a revolver. Scott drove her vehicle to her residence in Penn Hills with Reddix, King and the defendant as occupants. Later that morning the participants learned of Bailey's death.

Detective Sergeant Steven Roberts of the Aliquippa Police Department testified that a total of four spent .45 caliber casings were located at the scene and fragments from other bullets of an unknown caliber were located in the roadway. He explained that Lucien Roberts' .45 caliber pistol was a semi-automatic weapon which ejected spent casings. No casings of any other caliber were found at the scene. Detective Sergeant Roberts explained that since the silver handgun in the possession of the defendant was a revolver, which does not automatically eject its spent casings, he did not expect to find any spent casings from the revolver. Detective Sergeant Roberts further indicated that upon a check with the Pennsylvania State Police, a certification was received that the defendant did not possess a license to carry a firearm nor was he eligible to do so due to his age of 19 years. The three bullets in the body of Bailey were determined to be .45 caliber ammunition.

Officer Brandon Yourke of the Wilkinsburg Police Department testified that he arrested the defendant on an unrelated outstanding warrant on July 21, 2011, eight days after the shooting, and upon searching the defendant found six live .38 caliber bullets in his left front trouser pocket.

5

The Commonwealth called William Best as a ballistics expert. Mr. Best is employed as a forensic scientist specializing in firearms and tool marks in the Allegheny County Medical Examiner's Office, where he has been employed for approximately four years. Mr. Best earned a bachelor's degree in biology from Duquesne University in 2007, a master's degree in forensic science from Duquesne University in May, 2008, and completed a laboratory training program for firearms and tool marks. He took part in additional training provided by the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco and Firearms. Mr. Best previously was qualified as a ballistics expert in the Court of Common Pleas of Allegheny County and the District Court for the Western District of Pennsylvania. Mr. Best was requested to and did take measurements of a bullet depicted on an x-ray of Elmore's body using a digital micrometer, and excluded the bullet in Elmore's body as being a .45 caliber bullet based on its size. He further indicated that he could not exclude the bullet as being either a .38 caliber or a .32 caliber bullet. Mr. Best indicated that he had never taken measurements of an x-ray image previously but was aware that the procedure had, in fact, been utilized. He also related that he had not received any training in radiology.

Shakir was convicted by a jury on September 11, 2012, of criminal attempt to commit criminal homicide, 18 Pa.C.S. §901(a); 4 counts of aggravated assault, 18 Pa.C.S. §2702(a)(1) (2 counts), and §2702(a)(4) (2 counts), respectively; firearms not to be carried without a license, 18 Pa.C.S. §6106(a)(1); and, recklessly endangering another person, 18 Pa.C.S. §2705. On October 15, 2012, the court imposed sentences of not less than eight and one-half years nor more than seventeen years on count 1 charging attempted murder of the victim, Brian Elmore; not less than five years nor more than ten years on count 2 charging aggravated

6

assault of the victim, Lucian Roberts, to run consecutive to the sentence for attempted murder; and not less than one and one-half years nor more than three years on count 6 charging firearms not to be carried without a license to run consecutive to the sentence for aggravated assault, for an aggregate term of not less than fifteen years nor more than thirty years. No further penalties were imposed on the three remaining counts of aggravated assault and recklessly endangering another person by reason of merger. The imposition of the sentence of not less than five years nor more than ten years for the aggravated assault count was pursuant to the mandatory sentence provisions of 42 Pa. C.S. §9712, after the Commonwealth's required notice of intention to proceed under said section.

The Superior Court, in its non-precedential decision filed on December 17, 2013 at No. 517 WDA 2013, affirmed the judgment of sentence. On May 15, 2014, the Supreme Court denied Shakir's petition for allowance of appeal at No. 39 WAL 2014.

Shakir timely filed his first pro-se petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S. Sections 9541-9546, inclusive, on March 18, 2015, in which he alleged several claims of ineffective assistance of counsel and the illegality of the mandatory minimum sentence for aggravated assault. The Beaver County Public Defender's Office was appointed on April 8, 2015 to represent

7

Shakir and granted 60 days to amend or enlarge upon Shakir's pro-se petition. William Braslawsce, Esquire entered his appearance on behalf of Shakir on April 24, 2015 and filed a counseled PCRA petition on June 5, 2015, simply incorporating Shakir's pro-se petition. Due to the unavailability of this writer, the Honorable Harry E. Knafelc scheduled and conducted the PCRA hearing on July 23, 2015, after which Judge Knafelc entered an order on July 28, 2015, granting, in part, the relief requested in Shakir's PCRA petition and directing that Shakir be resentenced taking into account the decision of the United States Supreme Court in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (holding that any fact that increases the mandatory minimum sentence for a crime is an element of the crime and not a sentencing factor, and thus must be proven beyond a reasonable doubt after submission to the jury). All other claims in Shakir's petition were denied. Pursuant to Judge Knafelc's order, this court scheduled and held a hearing on August 26, 2015, following which resentencing was denied on the basis of the Superior Court's decision in *Commonwealth v. Riggle*, 119 A.3d 1058 (Pa. Super. 2015), holding that *Alleyne* did not apply retroactively on post-conviction review. Counsel for Shakir filed an appeal to the Superior Court from this court's order on September 24, 2015 at No. 1469 WDA 2015, and Shakir filed a pro-se notice of appeal on October 2, 2015. The Superior

8

Court dismissed the appeal on November 23, 2015 for failure to file a docketing statement, however, the appeal was reinstated on December 14, 2015 after the filing of the docketing statement. Upon the Superior Court's subsequent decision in *Commonwealth v. Ruiz*, 131 A.3d 54 (Pa. Super. 2015) on December 30, 2015, determining that *Alleyne* may be applied retroactively when a defendant's case is pending on direct appeal, Judge Knafelc, by correspondence of January 13, 2016, requested the Superior Court to remand the case for resentencing, which request was granted by the Superior Court on February 11, 2016. Shakir's direct appeal was pending at the time of the *Alleyne* decision on June 27, 2013.

Shakir, apparently unaware that the appeal had been reinstated, filed a second pro-se PCRA petition on February 2, 2016, alleging ineffective assistance of counsel for permitting the appeal to be dismissed. By reason of the reinstatement of the appeal and remand for sentencing, no action was taken on the second pro-se PCRA petition.

Pursuant to the Superior Court's remand and its decision in *Commonwealth v. Valentine*, 101 A.3d 801 (Pa. Super. 2014) (declaring 42 Pa. C.S. §9712 unconstitutional in its entirety), this court, after hearing, entered an amended sentence order on April 26, 2016, solely on count 2, charging aggravated assault causing serious bodily injury, by modifying the original sentence order from the

9

mandatory sentence of not less than five years nor more than ten years to a sentence within the standard range of the sentencing guidelines of not less than three and one-half years nor more than seven years, despite the Commonwealth's argument for a sentence in the aggravated range. The sentencing guidelines for aggravated assault attempting serious bodily injury as a felony of the first degree carries an offense gravity score of ten, and with Shakir's prior record score of one, provided a mitigated sentence of 18 months, standard range of between 30 months and 42 months and an aggravated sentence of 54 months. *Sentencing Guidelines, Sixth Edition Revised December 5, 2008*, 204 Pa. Code §303.15, Offense Listing, and §303.16, Basic Sentencing Matrix. The balance of the original sentence order of October 15, 2012 was maintained. No appeal was filed from this judgment of sentence.

Shakir, on August 1, 2016, filed his third pro-se PCRA petition alleging ineffective assistance of counsel for failure to file a post-sentence motion and/or appeal from the court's April 26, 2016 judgment of sentence. Steven Valsamidis, Esquire was appointed by the court as counsel for Shakir on August 30, 2016 and granted 60 days to amend/enlarge Shakir's pro-se petition. After an additional extension of 45 days, an amended, counseled PCRA petition was filed on December 14, 2016. Following a hearing held on July 5, 2017, the court

10

determined that counsel's failure to perfect an appeal after requested to do so constituted ineffective of assistance of counsel, granted Shakir's PCRA petition and reinstated his appeal rights. Rather than file an appeal, Shakir filed a post-sentence motion on July 17, 2017, in which he claimed that the court, in imposing the sentence for attempted murder, utilized the incorrect sentencing guidelines for attempted murder with serious bodily injury, when the defendant was charged solely with attempted murder generally, and the jury was not instructed on the offense of attempted murder with serious bodily injury but only with attempted murder generally. The court directed the filing of briefs and scheduled a hearing/argument for December 20, 2017 to determine whether Shakir should be resentenced, and if so, the appropriate sentence to be imposed.

At the hearing/argument Shakir argued, and the Commonwealth conceded, based upon the decision in *Commonwealth v. Barnes*, 167 A.3d 110 (Pa.Super. 2017), that incorrect sentencing guidelines were utilized for the offense of attempted murder, since Shakir was sentenced for attempted murder with serious bodily injury when he had been charged and the jury had been instructed solely on attempted murder generally. The facts in *Barnes* are indistinguishable from those in the instant case. In *Barnes*, the defendant was not charged with attempted murder resulting in serious bodily injury, the information did not allege serious

11

bodily injury and the jury was not instructed on the charge of attempted murder causing serious bodily injury. The trial court applied Section 1102(c) of the Crimes Code, 18 Pa. C.S. §1102(c), in imposing a maximum term of imprisonment of 40 years. The Superior Court held that in the absence of a jury finding of serious bodily injury, the sentence violated the holding in *Apprendi*. *Barnes* is thus also controlling as to the use of the incorrect sentencing guidelines. Therefore, the court utilized the correct sentencing guidelines for attempted murder generally without consideration for serious bodily injury. Secondly, Shakir asserted that the court's application of the deadly weapon used enhancement without a specific and separate factual finding by the jury of the use of a deadly weapon violated the holding in *Alleyne*. The court rejected Shakir's position on the deadly weapon used enhancement and ordered that the original sentence for attempted murder remain in full force and effect.

In his concise statement, Shakir first claims, citing to *Commonwealth v. Barnes*, supra, that the court abused its discretion and displayed vindictiveness toward him by imposing a sentence on the offense of attempted murder identical to the sentence imposed for said offense in the sentence orders of October 15, 2012 and April 26, 2016, without reference to the sentence guidelines and in order to preserve the integrity of the original sentencing scheme. In *Barnes*, the defendant

12

after being convicted by a jury, was sentenced to terms of incarceration for attempted murder of 20 years to 40 years, for aggravated assault to two and a half years to five years, and for kidnapping of two and a half years to five years, with all sentences running consecutively. On appeal, the Superior Court determined that the conviction for aggravated assault and attempted homicide should have merged and remanded for resentencing. Upon remand, the trial court resentenced the defendant to 20 years to 40 years for attempted murder followed by a consecutive term of five years to ten years for kidnapping. The defendant again appealed claiming the trial court abused its discretion when imposing a more severe sentence for kidnapping on remand thus demonstrating a presumption of vindictiveness. The court in *Barnes* referred to *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed. 2d. 656 (1969), which held that whenever a judge imposes a more severe sentence on a defendant after a new trial, the reasons for his doing so must affirmatively appear and be based upon objective information concerning identifiable conduct upon the part of the defendant occurring after the time of the original sentencing proceeding. *Pearce's* rational for providing reasons on the record also applies when the original sentence is vacated and a second sentence is imposed without an additional trial. *Commonwealth v. Greer*, 382 Pa. Super. 127, 554 A.2d 980, 987 n.7 (1983). Absent evidence that a sentence

13

increase is justified due to objective information concerning a defendant's case, the presumption of vindictiveness cannot be rebutted. *Commonwealth v. Serrano*, 727 A.2d 1168, 1170 (Pa. Super. 1999). The *Barnes* trial court explained that by increasing the kidnapping sentence, the original sentencing structure was merely maintained. Preserving the integrity of a prior sentencing scheme is a legitimate sentencing concern, *Commonwealth v. Walker*, 390 Pa. Super. 76, 568 A.2d 201, 205 (1989), disapproved on other grounds by *Commonwealth v. Robinson*, 931 A.2d 15, 20-22 (Pa. Super. 2007). A trial court may properly resentence a defendant to the same aggregate sentence to preserve its original sentencing scheme. *Commonwealth v. Bartrug*, 732 A.2d 1287, 1289 (Pa. Super. 1999), appeal denied, 561 Pa. 651, 747 A.2d 896 (1999). The *Barnes* court determined that the defendant was not the victim of a vindictive sentence on the part of the trial court, as his aggregate sentence after remand remained the same.

In the instant case, the court has not increased the sentence for attempted murder, but specifically referred to and used the proper sentencing guidelines. In its original sentence, the court sentenced the defendant using the guidelines for attempted murder with serious bodily injury and the deadly weapon used enhancement, which considering Shakir's prior record score of one, converted to an offense gravity score of 14 with a mitigated sentence at 90 months and the

14

standard range of sentence at between 102 months and 240 months. (See 204 Pa. Code §§303.15, Offense Listing; 303.3(c)(4), Offense Gravity Score, Inchoate Offenses; 303.9(b), Deadly Weapon Enhancement Sentence Recommendations; 303.16, Basic Sentencing Matrix; and 303.18, Deadly Weapon Enhancement/Used Matrix). When utilizing the correct sentencing guidelines for attempted murder with no serious bodily injury and the deadly weapon used enhancement, the sentencing guidelines provided for an offense gravity score of 13, with the mitigated sentence of 72 months, the standard range of 84 months to 102 months and the aggravated sentence of 114 months. *Id.* Shakir argued that the court should use sentencing guidelines for attempted murder with no serious bodily injury and no deadly weapon used enhancement making the offense gravity score 13, with the mitigated sentence of 54 months, the standard range of 66 months to 84 months and the aggravated sentence of 96 months. *Id.* The court's original sentence of 102 months for attempted murder with serious bodily injury was within the standard range. Using the corrected sentencing guidelines, 102 months is also within the standard range. The court explained that the reasons for the sentence for attempted murder remained the same as outlined at the time of the original sentence hearing, and thus, the sentence would remain identical in order to maintain the sentencing

15

scheme. Shakir has thus failed to demonstrate either actual or presumptive vindictiveness or an abuse of discretion on the part of the court.

Shakir next asserts that *Alleyne* and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed. 2d 435 (2000), prohibit the application of the deadly weapon used enhancement to the charge of attempted murder, unless the jury specifically finds as a fact that a deadly weapon was used. *Apprendi* held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proven beyond a reasonable doubt. The defendant's argument fails for two reasons. The Commonwealth's information in count 1 charging criminal attempt to commit criminal homicide specifically alleges that Shakir did "with the intent to commit a specific crime, do any act which constitutes a substantial step towards the commission of that crime, to-wit: **actor did fire a handgun at the victim, Brian Elmore, which caused him to be struck several times,** in an attempt to commit the crime of homicide." (Emphasis supplied). Further, in the charge to the jury, the court, as one of the three elements required to be proven beyond a reasonable doubt, charged to the jury as follows:

> That the defendant did a certain act. **In this case, the Commonwealth alleges that the act which the defendant committed was fire a handgun at the victim, Brian Elmore, which caused him to be struck several times.** (Emphasis supplied).

16

The jury was specifically required to find that Shakir fired a handgun at the victim and struck him several times in order to be convicted of attempted murder, and thus, Shakir's argument is rejected.

Secondly, the deadly weapon used enhancement is contained in §303.10 of the Sentencing Guidelines, 204 Pa. Code §303.10, and provides in relevant part as follows:

a. Deadly Weapon Enhancement.

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

(i) any firearm, (as defined in 42. Pa. C.S. §9712) whether loaded or unloaded.

The sentencing court has no discretion to refuse to apply the deadly weapon enhancement when it is appropriate. *Commonwealth v. Solomon*, 151 A. 3d 672, 677 (Pa. Super. 2016), citing *Commonwealth v. Magnum*, 439 Pa. Super. 616, 654 A.2d 1146, 1149-50 (1995). The court must begin its calculation of a sentence from the correct starting range, including when appropriate, the deadly weapon enhancement, *Magnum* at 1150 and *Solomon* at 677. As to the specific issue raised by Shakir, the Superior Court, in *Commonwealth v. Shull*, 148 A.3d 820 (Pa.

17

Super. 2016) n.6 and *Commonwealth v. Buterbaugh*, 91 A.3d 1247 (Pa. Super. 2014) n.10, appeal denied, 628 Pa. 627, 104 A.3d1 (2014), explained that the imposition of the deadly weapon sentencing enhancement does not implicate the holdings of *Alleyne* nor *Apprendi*, as follows:

> In both [*Alleyne* and *Apprendi*], the Supreme Court determined that certain sentencing factors were considered elements of the underlying crime, and thus, to comply with the dictates of the Sixth Amendment, must be submitted to the jury and proven beyond a reasonable doubt instead of being determined by the sentencing judge. However, this inquiry is not relevant to our case because of the nature of the DWE.
>
> *Alleyne* and *Apprendi* dealt with factors that either increased the mandatory minimum sentence or increased the prescribed sentencing range beyond the statutory maximum, respectively. Our case does not involve either situation; instead, we are dealing with a sentencing enhancement. If the enhancement applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range. Therefore, neither of the situations addressed in *Alleyne* and *Apprendi* are implicated.

In the present case, the jury specifically determined beyond a reasonable doubt that Shakir fired a handgun at the victim, Brian Elmore, which caused him to be struck several times as an element in convicting him of attempted murder, which required the court to apply the deadly weapon used enhancement in accordance with §303.10(a)(2)(i) of the sentencing guidelines. The court, utilizing the correct sentencing guidelines for the offense of attempted murder generally, applying the deadly weapon used enhancement, and following the dictates of *Commonwealth v.*

18

*Serrano*, 150 A.3d 470, 473 (Pa. Super. 2016), to review the entire case file anew, chose to properly maintain its original sentence, which was within the standard range, in order to preserve the integrity of the sentencing scheme.

Based on the foregoing, the court entered its order of January 23, 2018 denying Shakir's post-sentence motion.

BY THE COURT

_____
S.J.